Mrs. Adelheit RUBIOLO and J. L. Lytle, Jr., et al., Appellants,

v.

J. L. LYTLE, Jr., et al., and Mrs. Adelheit Rubiolo, Appellees.

No. 14077.

Court of Civil Appeals of Texas.

San Antonio.

July 10, 1963.

Rehearing Denied Sept. 4, 1963.

Moursund, Ball & Bergstrom, Travis M. Moursund, Andrew Dilworth, James A. McKay, Jr., San Antonio, for appellants.

Moursund, Ball & Bergstrom, San Antonio, for appellees.

MURRAY, Chief Justice.

This suit was instituted by Mrs. Adelheit Rubiolo, a widow, individually and as executrix of the estate of Joe J. Rubiolo, deceased, in the form of trespass to try title, against J. L. Lytle as owner of one lot, and the owners of fifteen other lots, seeking to establish a boundary line between her property and the sixteen lots here involved. The jury found in favor of Mrs. Rubiolo as to her contention as to the southern boundary line of her property, but found in favor of the owners of the sixteen lots as to their contention of limitation, and thereby fixed their various boundary lines as contended by them. This had the effect of giving to the owners of the sixteen lots the disputed strip between their property and that of Mrs. Rubiolo. On motion for judgment non obstante veredicto by Mrs. Rubiolo, the trial court set aside the findings of the jury as to some of the lot owners and permitted the verdict to stand as to the owners of the remaining lots. The trial court rendered judgment in Mrs. Rubiolo's favor as to the owners of Lots 3, 10, 14 and 16, Duran Subdivision, and against her as to the owners of all the other lots. Mrs. Rubiolo has appealed as to all of the defendants below, and the owners who did not recover have also appealed. Thus we have two sets of appellants.

It is apparent that before Mrs. Rubiolo could recover she would have to show a record title in her as to the land claimed by her, from the common source alleged to be Pedro Flores. In an attempt to show a record chain of title in herself, Mrs. Rubiolo introduced a deed from Pedro Flores to John Layer and a deed from Pedro Flores to Joseph Ulrich. The description of the land attempted to be conveyed in each of these two deeds is fatally defective.

The description found in the deed from Pedro Flores to John Layer, dated January 29, 1858, reads as follows:

"All that certain tract or parcel of land lying and being in the County of Bexar and State of Texas, situated near the head of the San Antonio River, on the right bank of the Upper Labor Ditch, in District No. 3 of the land formerly belonging to the City of San Antonio and sold by her. Said lot has a front of 25 varas on the street in the west and runs back to the ditch in the east with 280 varas, together with all and singular the rights, etc."

The description found in the deed from Pedro Flores to Joseph Ulrich dated September 30, 1859, reads as follows:

"A strip of land with twenty (20) varas front of the ditch of the Upper

Labor and same width throughout and running along south side of the tract sold by me to John Layer of same length as his tract and bounded on the north by stone wall of said Layer."

It is apparent that before the parcel of land conveyed to Joseph Ulrich could be located on the ground, the parcel of land conveyed to John Layer would have to be definitely located. This cannot be done by the description found in the deed to John Layer. The rock wall referred to in the Ulrich deed cannot be located, no one seems to know where this rock wall was located. The land attempted to be described in the Layer deed might be any parcel of land owned at the time by Pedro Flores, lying between the street in the west and the ditch in the east. There is no definite point given anywhere in the description. It is not even described as lying between parallel lines. The lot has a front of 25 varas on the street. We do not know whether it forms a right angle with the street or some other kind of angle. We are not told its shape, whether it is in a triangular or rectangular shape, or is in some irregular shape. If we are unable to locate the Layer land, then certainly we cannot locate the Ulrich parcel of land, and until the Ulrich land is definitely located the boundary line between Mrs. Rubiolo's land and the sixteen lots cannot be located as claimed by Mrs. Rubiolo. There is no evidence to support the jury's finding as to the southern boundary line of the Rubiolo land, and the court erred in rendering judgment against some of the lot owners. Broaddus v. Grout, 152 Tex. 398, 258 S.W.2d 308.

Appellant's witness W. F. Pickard, an expert surveyor, testified on cross-examination as follows:

"Q    I am handing you Defendants' Exhibit C, Mr. Pickard, and I am handing you Defendants' Exhibit D, which purports to be a copy of a deed from Pedro Flores to John Layer. Now, the pertinent part of the field notes there, 'all that tract or parcel of land lying and being in the County of Bexar, and State of Texas, situated near the head of the San Antonio River on the right bank of the Upper Labor Ditch, in District No. 3, of the land formerly belonging to the City of San Antonio and sold by her. Said lot has a front of 25 varas on the street in the west and runs back to the ditch in the east with 280 varas.' Now, if you went to survey out the tract described in Defendants' Exhibit D all you would know about it would be that it was in District 3 on the right bank of the Upper Labor Ditch and had a front of 25 varas on the street in the west and runs back to the ditch in the east with 280 varas; isn't that correct?

"A    That's right.

"Q    You wouldn't know where the north line of it was at all?

"A    No, sir.

"Q    And you wouldn't know where the south line of it was, could you?

"A    No, sir.

"Q    And it only locates the land as in District No. 3, and being sold to the grantor by the City of San Antonio; is that correct?

"A    That's right.

"Q    And you couldn't actually locate this without—you couldn't actually pin it down to any land in District 3, could you?

"A    Not without measuring it.

"Q    You would, to get anywhere at all, you would have to go and find if this was the only tract that Pedro Flores acquired from the

city in the whole of District 3, wouldn't you?

"A Well, we would have to dig into the records and see whether we couldn't determine from different records, different information, that the city may have, or anyone else may have, in order to determine where this piece of land would be.

"Q You couldn't do it from the deed; you would have to go to various collateral sources?

"A We couldn't do it from the deed and be sure."

The evidence failing to establish the southern boundary line of the Rubiolo land, the trial court should have given an instructed verdict for the owners of the sixteen lots.

The sufficiency of the description of land contained in a deed is discussed in 19 Tex. Jur.2d, § 123, p. 422: "A deed is void as a conveyance if it fails to furnish the means of determining with reasonable certainty the land intended to be covered by it." And in § 125, p. 427, we find the following statement:

"It is not necessary that the deed contain such a complete description that the land can be identified without extrinsic testimony. Under the maxim that that is certain which is capable of being made certain, a description that does not fully define the land, but when aided by extrinsic testimony enables the land referred to be ascertained with certainty, is sufficient."

What was said by Justice Smith, speaking for the Supreme Court in Jones v. Mid-State Homes, Inc., Tex., 356 S.W.2d 923, 924, at page 924, is in point here:

"The Surveyor's field notes are the basis for the plaintiff's contention that the description contained in the tendered instruments sufficiently identified the land. We are not called upon to decide whether or not the Surveyor's field notes constitute a valid description of the land. It is sufficient to say that the description contained in the excluded instruments was so defective that it failed to furnish a nucleus of description sufficient to identify any particular property."

We have almost the exact situation in the case at bar. A mere reading of the description contained in the Layer and Ulrich deeds will convince anyone that these deeds do not furnish a nuclear description sufficient to identify any particular property. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703, 705, is another case squarely in point. Mrs. Rubiolo must recover, if at all, on the strength of her own title and cannot rely upon the weakness of her adversary's title. 41-A Tex.Jur. p. 665, § 138.

The trial court fixed the plaintiff's southern boundary in keeping with the verdict of the jury, except as to lots 3, 10, 14 and 16. In this the court erred, the judgment should have included and not excluded these lots and their respective owners. The judgment will be reformed so as to provide that Adelheit Rubiolo take nothing by her said suit as to all of the defendants, and that the boundary line between her property and the property of the owners of all sixteen lots be fixed as the North line of the Duran Subdivision, according to map or plat of said subdivision recorded at Vol. 2222, page 353, Deed and Plat Records of Bexar County, Texas. A more complete description of this boundary line is found in the judgment of the trial court, but we strike therefrom the following: "excepting however from this description the North boundary lines of Lots 3, 10, 14 & 16 of said Duran Subdivision."

The judgment of the trial court as thus reformed is in all things affirmed.

The costs of this Court and the court below are taxed against Adelheit Rubiolo.

Reformed and affirmed.

BARROW, J., not participating.