Harvey KOMET, M.D., Individually, and Dr. Harvey Komet, M.D., P.A., d/b/a Hearing Solutions, Appellants/Cross–Appellees,

v.

Glenda GRAVES, Appellee/Cross–Appellant.

No. 04–99–00878–CV.

Court of Appeals of Texas, San Antonio.

Jan. 31, 2001.

Linda Daniels, Robert E. Valdez, P.C., San Antonio, for Appellant.

Denise Nixon Bunk, G. Wade Caldwell, Martin, Drought & Torres, Inc., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

KAREN ANGELINI, Justice.

### FACTUAL AND PROCEDURAL BACKGROUND

Dr. Harvey Komet is a board-certified otolaryngologist. As part of his medical

practice, which is a professional association, Komet operated Hearing Solutions. Komet's son, David, advised him to interview Glenda Graves to supervise a recently acquired medical provider contract for Hearing Solutions.

Komet, Graves, and David met on two separate occasions. At their first meeting, Graves and Komet discussed the terms of her position. Before the second meeting, Graves drafted an employment agreement, which reflected the terms discussed at their first meeting. Graves then presented Komet with the agreement during their second meeting. This agreement is at the center of the current dispute.

On August 1, 1995, Komet signed the agreement after making several handwritten notations on it. Specifically, on the document's title line, Komet wrote the word "Proposed" directly in front of "Employment Agreement." One term Graves included in the agreement provided that "[a] commission schedule structure shall be created and mutually agreed to and incorporated into this agreement no later than August 15, 1995." Komet wrote directly on top of that term "Commission schedule to be determined by future document." Another term, dealing with a possible equity position for Graves, stated "[e]mployee shall be given an equity position in Hearing Solutions ... Equity position shall be ___%." Again, Komet wrote on that term "[e]quity agreement to be determined in subsequent document." Komet added the language that a "[f]inal document [was] to be prepared by [the] corporate attorney" to the agreement.

Graves went to work for Komet on August 3, 1995. During her employment, Komet's attorney attempted to negotiate an employment contract with Glenda. They never reached an agreement. Graves was terminated on September 4, 1996. Graves, accordingly, brought suit against Komet and Harvey Komet, M.D., P.A. d/b/a Hearing Solutions on the alleged employment agreement. Graves claimed the notations made on the agreement affected only the two terms mentioned above. Komet, on the other hand, contended that his changes rendered the agreement merely a proposal. Despite his claims, the jury found a contract existed between Graves and Komet, individually, but found no damages and did not award Graves attorneys fees. Graves moved for a judgment notwithstanding the verdict, and the trial court granted it, entering a judgment in Graves's favor for the contract damages only. The judgment also decreed Komet and Harvey Komet, M.D., P.A. d/b/a Hearing Solutions as jointly and severally liable for all costs.

Komet appeals the judgment in five issues. First, he claims there is legally and factually insufficient evidence to support the jury's finding that he agreed to employ Graves under the terms contained in the document she prepared. Second, he asserts that Graves's proposal constituted an illegal contract of employment, and that the trial court should have sustained his objections to the charge or rendered judgment in his favor. In his third issue, Komet contends the trial judge erred by submitting Dr. Harvey Komet, M.D., Individually, in the charge. Fourth, Komet alleges the trial court should have disregarded the jury's affirmative answer that he was individually liable because it didn't find that Harvey Komet, M.D., P.A. d/b/a Hearing Solutions agreed to the terms in the agreement. And finally, Komet claims the trial court erred in disregarding the jury's zero damages finding and in submitting its own fact finding as a matter of law.

In her cross appeal, Graves claims the trial court erred in overruling her Motion for Directed Verdict and Judgment Notwithstanding the Verdict, thereby denying

her attorney's fees, which she established her entitlement to as a matter of law. Graves also asserts the trial court erred in overruling her Motion for Partial New Trial because she was entitled to attorney's fees as a matter of law.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

 In his first issue, Komet claims that the evidence was legally and factually insufficient to support the jury's finding that he agreed to employ Graves under only the typewritten terms contained in Graves's proposed agreement. In assessing whether the evidence supporting a jury finding is legally sufficient, we only consider evidence favorable to the jury's decision and disregard all evidence and inferences to the contrary. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Thrift v. Hubbard,* 974 S.W.2d 70, 77 (Tex. App.—San Antonio 1998, pet. denied). If there is more than a scintilla of evidence to support the finding, then the no evidence challenge fails. *See Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Thrift,* 974 S.W.2d at 77. In considering a challenge to the evidence's factual sufficiency, we review all of the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence that it is manifestly unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Thrift,* 974 S.W.2d at 77.

### B. Contract Formation

 Komet claims that the evidence supporting the jury's finding that a binding employment contract existed between himself and Graves is legally and factually insufficient.[1] Specifically, he claims that Graves's agreement was merely a proposal and not a valid, binding contract. To form a binding contract the following elements must be in place: "1) an offer, 2) an acceptance in strict compliance with the terms of the offer, 3) a meeting of the minds, 4) each party's consent to the terms, and 5) execution and delivery of the contract with the intent that it be mutual and binding." *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex.App.—San Antonio 1997, no pet.). Komet attacks Graves's agreement based on the lack of an acceptance in strict compliance with the terms of her offer, a lack of mutual assent, and the fact that a term material to the agreement was left open for future negotiation.

#### 1. *Lack of Strict Compliance with the Offer's Terms*

Komet asserts that the evidence is legally and factually insufficient to support the jury's finding that he and Graves entered into an agreement because the document's face reflects that he did not accept Graves's offer in strict compliance with its terms. He claims that the "inclusion of the word 'Proposed' in the title of the document and ... the notation preceding the signature block that the 'final document [would be] prepared by [the] corporate attorney' " show that both parties expected a subsequent contract would be drawn to govern the employment relationship.

---

**1.** This cause is the last that remains from multiple claims Graves brought against Komet. Komet moved for summary judgment on a fraud claim, as well as the currently disputed breach of contract action. The trial court granted his motion as to the fraud claim. Graves claims that by denying the motion on the breach grounds, the trial court agreed with her assertion that the contract was ambiguous. Komet does not dispute the notion that the contract is ambiguous.

■ In response, Graves correctly points out that any attempt to change an offer operates as a rejection and counteroffer. *United Concrete Pipe Corp. v. Spin–Line Co.,* 430 S.W.2d 360, 364 (Tex.1968); *Wild v. Hargrave,* 565 S.W.2d 558, 560 (Tex.App.—San Antonio 1978, no writ). If, however, the party who made the original offer accepts the proposed modifications, then a binding contract exists. *Wild,* 565 S.W.2d at 560. Graves argues that Komet made her a counteroffer by adding or changing some terms contained in her proposal, which she accepted in "strict compliance ."

The evidence in this case shows that Graves presented Komet with an employment agreement. Komet revised the agreement, as described above. Both parties then signed the agreement. Considering only the evidence that supports the jury's verdict, we find there is legally sufficient evidence to support the jury's findings. And, looking objectively at all of the evidence, there is factually sufficient evidence to support the jury's finding that Graves accepted Komet's counteroffer.

### 2. *Meeting of the Minds*

■ Komet also claims that the evidence is legally and factually insufficient to support the jury's finding that he and Graves entered into a contract because there was no meeting of the minds. In determining whether there was a "meeting of the minds," and therefore an offer and acceptance, courts use an objective standard, considering what the parties did and said, not their subjective states of mind. *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex.App.—San Antonio 1999, pet. denied). Courts look to the communications between the parties, as well as the acts and circumstances surrounding the communications, in making this determination. *Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ).

The following evidence was presented at trial. Graves testified that Komet did not object to most of the terms contained in the agreement, and that Komet never stated that the document was not an employment agreement. In fact, she explained that at their breakfast meeting, she and Komet went over each term in the document, agreeing that only the commission and equity terms would be dealt with in a final document. She also explained that Komet followed through with terms one through seven of the agreement, and that he never gave her any indication that he would not renew the contract after a year.

Komet highlighted for the jury the fact that he wrote the word "proposed" on the top of the document. He also explained that he told Graves that his attorney would draw up the contract. Graves went to work, according to Komet, without a written contract, and during her employment, continued to negotiate the written agreement's terms with David Komet and Komet's attorney.

We find there is evidence to uphold the jury's findings. The evidence that supports the jury's verdict tends to show that Graves and Komet understood the document to be an employment agreement, and is therefore, legally sufficient. And, all of the evidence suggests that either party's interpretation is plausible. Therefore, the evidence is also factually sufficient.

### 3. *Material Term Left Open for Future Negotiation*

■ In his insufficient evidence challenge, Komet finally asserts that Graves left a material term open for future negotiation, making the alleged contract unenforceable. This particular issue may not be challenged on the basis that there is insufficient evidence. Rather, whether an agreement is legally enforceable or binding is a question of law. *See America's*

*Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617, 622 (Tex.App.—San Antonio 1996, writ denied). A contract, generally, must sufficiently define its essential terms to allow a court to determine the parties' obligations. *See McCulley Fine Arts Gallery v. X Partners,* 860 S.W.2d 473, 477 (Tex.App.—El Paso 1993, no writ). Parties to a contract, however, may agree to some contractual terms and leave other matters open for later negotiation. *See id.* When the parties, however, leave a term essential to the contract open for future negotiations, no binding contract exists. *See id.*

The agreement sets out the time it becomes and remains effective, Graves's salary, health insurance provisions, vacation time and other benefits. These provisions outline the parties' obligations to each other. There does not appear to be any dispute that Graves would receive neither commission nor an equity position in Hearing Solutions. Rather, Graves and Komet agreed to determine the specific percentages at a later date. The percentages are not material and could, therefore, be left open for future negotiation without destroying the contract's effectiveness. *See McCulley Fine Arts Gallery v. X Partners,* 860 S.W.2d 473, 477 (Tex.App.—El Paso 1993, no writ). We, therefore, find the contract is not unenforceable because no material terms were omitted; rather, immaterial terms to the contract were simply left to be determined in the future.

### ILLEGALITY

 Komet asserts, in his second issue, that the document is an illegal employment contract. Graves, however, argues Komet has waived this complaint. Generally, an affirmative defense must be

pleaded or it is waived. TEX.R. CIV. P. 94; *Phillips v. Phillips,* 820 S.W.2d 785, 789 (Tex.1991). Illegality is an affirmative defense. TEX.R. CIV. P. 94. The illegality defense, however, need not be pleaded by the defendant "[i]f the illegal nature of the document to be relied upon or sought to be enforced is apparent from the plaintiff's pleadings ..." *Phillips,* 820 S.W.2d at 789. Two principles support this exception. Specifically, "[p]leading an agreement illegal on its face in effect anticipates the defense." *Id.* (citing *Raney v. White,* 267 S.W.2d 199, 200 (Tex.Civ.App.—San Antonio 1954, writ ref'd)). And, courts will not enforce an illegal contract, even if the parties don't object. *Id.* Enforcement of an illegal contract violates public policy.

The clerk's record includes Graves's first and ninth-amended pleadings. It is not apparent from either document that the contract, here, was illegal. The record also contains Komet's first answer, which is a general denial. His amended answer contains a general denial, and pleadings that there was no consideration, Graves failed to mitigate her damages, and res judicata and collateral estoppel. Because Komet failed to plead illegality, and because the contract's illegal nature was not apparent from Graves's pleadings, Komet's claim that the document is illegal is waived.[2]

### THE JURY CHARGE

#### 1. Standard of Review

 In his fourth issue, Komet claims that "[t]here [is] no evidence in the record to support the individual submission of Dr. Harvey Komet in Question Number 1." In reviewing a trial court's submission of jury questions, appellate

---

**2.** In his issue, Komet asserts the trial court erred in failing to sustain his objection to the charge. However, Komet did not object to

the charge on the basis that the contract is illegal.(6/17 RR 240).

courts employ an abuse of discretion standard. Tex.R. Civ. P. 277; *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). *Green Tree Acceptance, Inc. v. Combs*, 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied). A trial judge must submit requested questions to the jury if the pleadings and evidence support them. Tex.R. Civ. P. 278; *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 663 (Tex.1999); *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992).

### 2. Sufficiency of the Evidence

■ The trial judge did not abuse his discretion by submitting Komet, individually, in the jury charge, because there is evidence supporting the submission. Specifically, Graves pleaded that she and "Komet *or* Komet, P.A. .... entered into an Employment Agreement" (emphasis added). And, she claimed that "Komet *or* Komet, P.A., ..., did not honor [his] contractual obligation" (emphasis added). There is evidence in the record to support the question's submission as well. First, the agreement itself states that it was "made and entered into this 1 of August 1995 by and between Dr. Harvey Komet and—hereinafter referred to as 'Employer' and Ms. Glenda Graves hereinafter referred to as 'Employee.' " And, the agreement is signed by "Harvey Komet M.D." Nothing on the document refers to Harvey Komet, M.D., d/b/a Hearing Solutions. Komet concedes that he signed the proposal without indicating that he was signing on behalf of his professional association. He asserts that the record conclusively establishes that he signed the proposal to demonstrate the professional association's intent to enter into contract negotiations with Graves. Komet's testimony simply raises a question of whether Graves was employed by the P.A. or by Komet, himself. Therefore, the trial court did not abuse its discretion in submitting the question disputed here.

### JUDGMENT NOTWITHSTANDING THE VERDICT

■ Komet asserts, in his fifth issue, that the trial court erred in entering a judgment notwithstanding the verdict, substituting its own damages finding in place of the jury's zero damages finding. Specifically, he claims that the record contains sufficient evidence upon which the jury could have based its finding.

■ A trial court may disregard a jury's finding and grant a motion for judgment notwithstanding the verdict only when there is no evidence to support the jury's finding. Tex.R. Civ. P. 301; *Brown v. Bank of Galveston, Nat. Ass'n*, 963 S.W.2d 511, 513 (Tex.1998). This court reviews a judgment notwithstanding the verdict under a legal sufficiency or "no evidence" standard of review. *Guzman v. Synthes*, 20 S.W.3d 717, 719 (Tex.App.—San Antonio 1999, no pet. h.). In determining whether there is no evidence to support a jury verdict, we consider the evidence favorable to the jury's verdict and reasonable inferences that tend to support it. *Brown*, 963 S.W.2d at 513; *Guzman*, 20 S.W.3d at 719. No evidence exists when the record discloses a complete absence of evidence that supports a vital fact. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990). If there is more than a scintilla of evidence to support the jury's finding, then the judgment notwithstanding the verdict should be reversed. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

The following is a summary of the evidence regarding damages. Graves made $45,500 per year while working for Komet. Komet fired Graves on September 4, 1996. Under the contract, he owed her eleven months worth of salary. Graves then went

to work for Trans World Leasing on September 9, 1996, earning approximately $10,000 less per year. Graves introduced into evidence two W 2 forms for the 1996 tax year, one from Komet and the other from Trans World Leasing. She also introduced a 1997 W 2 from Trans World Leasing. Based on her calculations from the W 2 forms, Graves testified that under the contract, she was entitled to $11,773.77 in damages. Later, on cross-examination, she explained that from Komet, she earned $3,800 per month. Then, she stated she earned $3,000 per month from Trans World Leasing. Agreeing with Komet's attorney, Graves stated she sustained a loss of $800 a month for 11 months. Komet's attorney pointed out to Graves that the difference would only be $8,800, instead of her claimed $11,773.77 in damages. At that time, Graves could not explain the difference. On redirect, Graves attempted to explain the discrepancy in her testimony. Her explanation, however, failed to clear up the disparity.

We find that there is no evidence that Graves sustained no monetary damages. The testimony and exhibits support a judgment in Graves's favor of either $11,773.77 or $8,800, or an amount in between the two. Thus, the jury's finding that Graves sustained no contract damages is unsupported by the evidence.

Although we find there is no evidence that Graves incurred no damages, the trial court could not have properly granted a judgment notwithstanding the verdict on the damages issue. Here, the damages are unliquidated. The parties did not agree in advance to an amount that constitutes just compensation for the breach. *See Newsom v. State,* 922 S.W.2d 274, 281 (Tex.App.—Austin 1996, writ denied). And, Graves's testimony as to the amount of damages she incurred is neither direct nor uncontroverted. Accordingly, a fact question remained as to the amount of contract damages. The trial court, by entering the judgment notwithstanding the verdict and assessing damages in the amount of $11,773.77, impermissibly acted as the fact finder in this case. The trial court, therefore, erred in granting Graves's motion for judgment notwithstanding the verdict.

Graves, in moving for judgment notwithstanding the verdict, alternatively requested a partial new trial on the issue of damages alone. A trial court may not grant a partial new trial when the damages are unliquidated and liability is contested. Tex.R. Civ. P. 320. The trial court, here, could not have granted Graves's request for a partial new trial on damages because, as explained above, her damages are unliquidated and, the issue of liability was contested at trial. Rather, the trial court should have granted a full new trial on its own motion. Tex.R. Civ. P. 320. We, therefore, reverse the trial court's judgment and, in the interest of justice, remand the cause for a new trial. Tex. R.App. P. 43.3(b).

## Conclusion

Because we find the trial court erred in entering the judgment notwithstanding the verdict and because the trial court should have granted Graves a new trial, we need not address the remaining issues on appeal. We reverse the trial court's judgment and remand the cause for a new trial.