MEMORANDUM OPINION



No. 04-07-00237-CV



DUNWORTH REAL ESTATE COMPANY,


Appellant



v.



CHAVEZ PROPERTIES,


Appellee



From the 225th Judicial District Court, Bexar County, Texas


Trial Court No. 2006-CI-10026


Honorable David A. Berchelmann, Jr., Judge Presiding



Opinion by: Phylis J. Speedlin, Justice

 

Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: January 2, 2008


REVERSED AND RENDERED

 Dunworth Real Estate Company appeals the trial court's summary judgment awarding
Chavez Properties specific performance of a lease agreement and purchase option for the business
"Airport Security Parking" and the related real property. We reverse the trial court's judgment, and
render summary judgment in favor of Dunworth because a binding and enforceable contract did not
exist as a matter of law, and Chavez Properties is entitled to take nothing on its claim for breach of
contract.

Factual and Procedural Background

 On May 11, 2006, Manuel Chavez III, a principal in the Georgia general partnership Chavez
Properties, and Jim Dunworth, owner of Dunworth Real Estate Company, met to discuss a potential
purchase or lease of Dunworth's business "Airport Security Parking" and the real property on which
the business is located. Chavez and Dunworth drove around the perimeter of the real property that
day. The next day, May 12, Dunworth and his daughter Janet Burzlaff, who was a newly licensed
real estate agent, and Chavez and his real estate agent, John Baines, attended a breakfast meeting to
discuss the lease/purchase; they also viewed an aerial photograph of the real property at this meeting. 
At the conclusion of the May 12 meeting, both Chavez and Dunworth signed a handwritten
memorandum of agreement which provides as follows:

 Chavez Properties and the Dunworth Real Estate Company & Affiliates agree to
enter into a lease with exclusive purchase option for the real property, equipment,
signage, personal property, and business, etc. for the property commonly known as
Airport Security Parking under the following terms . . . .


Under a section entitled "Lease," the memorandum provided for an initial term of five years at
$50,000 per month and 5% of gross; three additional "option terms" at the same rental rate upon 90
days prior written notice; that the lease is a "triple net lease," with the lease rate being "net of all
taxes and insurance;" Chavez's payment of a $100,000 security deposit "to be refunded at
completion of improvements;" and that Chavez could lease all the buses for $500 per month "as
needed." Under a section entitled "Purchase Option," the memorandum provided Chavez with an
option to purchase the "subject business, real property, etc. at any time after the initial 5 year term
by delivering written notice 60 days prior" for a "purchase option price" of $15,000,000; provided
for conveyance of a general warranty deed and good title at closing; recited that "[t]his is an
exclusive option to purchase for Chavez Properties;" and stated "customary terms" will apply at
closing. Finally, the memorandum stated, "[t]his memorandum of agreement will form the basis for
a formal lease and purchase option consistent with the terms set forth in this letter and other
customary terms." The memorandum is undated, but both parties agree it was signed by them on
May 12, 2006.

 A series of emails between Chavez and Burzlaff (1) followed the execution of the handwritten
memorandum. Later in the day on May 12, 2006, Burzlaff sent Chavez an email with a subject line
that reads "Airport Security Parking San Antonio," which supplied a metes and bounds description
of the real property, stating that it "includes two parcels comprising a total of approximately 16
acres" and naming the street boundaries for the 7 acre parcel and the 9 acre parcel. A May 15, 2006
email from Chavez to Burzlaff stated that a commencement date for the lease of "July 1 or so would
be fine," and Chavez's May 16 email stated that "as far as I am concerned, it is a done deal." 
Burzlaff's reply email on May 16 stated, "I will be happy to let them [a third party] know it's a done
deal." Shortly thereafter, Chavez's attorney mailed a draft of a formal lease/purchase agreement to
Dunworth, along with a check from Chavez for the $100,000 security deposit. On or about May 22,
2006, Dunworth informed Chavez that the formal lease/purchase agreement was unacceptable, and
that he had changed his mind. Dunworth and Chavez met a couple of times after that, but Chavez
was unable to convince Dunworth to continue with the deal. Chavez filed suit on June 29, 2006
alleging breach of contract and seeking specific performance of the handwritten contract.

 Both parties filed summary judgment motions. The trial court granted Chavez's motion for
summary judgment, and denied Dunworth's competing traditional and no-evidence motions for
summary judgment. The trial court entered an order awarding specific performance of the
lease/purchase agreement to Chavez, providing for a five year lease at $50,000 per month plus 5%
of gross, with options for three additional five-year terms, and a purchase option for a fixed price of
$15,000,000 which may be exercised at any time after the initial five year lease term. The trial
court's summary judgment order contains a detailed legal description of nine different tracts of real
property. An agreed order severing the issue of attorney's fees was signed on March 6, 2007, thereby
rendering the summary judgment order final and appealable. Dunworth timely appealed, raising
essentially three main issues: (1) whether a contract was formed through the parties' agreement on
the essential terms of the lease and purchase option; (2) if so, whether the contract is valid under the
Statute of Frauds and the Rule Against Perpetuities; and (3) whether Chavez is entitled to specific
performance as a remedy for breach of the contract.

Competing Summary Judgment Motions

Standard of Review 

 When both parties move for summary judgment, and the trial court grants one motion and
denies the other, the appellate court considers the summary judgment evidence presented by both
sides, determines all questions presented, and, if it determines the trial court erred, renders the
judgment the trial court should have rendered. Valence Operating Co. v. Dorsett, 164 S.W.3d 656,
661 (Tex. 2005); FM Properties Operating Co. v. City of Austin, 22 S.W.3d 868, 872-73 (Tex.
2000). We review the trial court's summary judgment de novo, regardless of whether the motion for
summary judgment was a traditional motion or a no-evidence motion. Provident Life and Acc. Ins.
Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing the summary judgment evidence,
we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts in the nonmovant's favor. Id. A party moving for a traditional summary
judgment must show that no genuine issue of material fact exists and that it is entitled to summary
judgment as a matter of law. Id. at 215-16; Tex. R. Civ. P. 166a(c); see also Long Distance Intern.,
Inc. v. Telefonos de Mexico, S.A. de C.V., 49 S.W.3d 347, 350-51 (Tex. 2001) (defendant moving
for summary judgment on an affirmative defense has the burden to conclusively establish that
defense). A party is entitled to summary judgment on a no-evidence motion when there is no
evidence of one or more essential elements of a claim or defense on which the adverse party would
have the burden of proof at trial. Tex. R. Civ. P. 166a(i). When the trial court's order does not
specify the grounds for granting summary judgment, we must affirm if any of the theories presented
in the motion have merit. Knott, 128 S.W.3d at 216; Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d
623, 626 (Tex. 1996).

 Here, Chavez's summary judgment evidence consists of his own affidavit in which Chavez
explains his understanding that he and Dunworth had a binding agreement, plus the depositions of
Dunworth and Burzlaff, and the deposition exhibits consisting of the aerial photo of the property,
several deeds related to the property, the series of emails between Burzlaff and Chavez, requests for
admissions to Dunworth, and the business records of Airport Security Parking. Dunworth's
summary judgment evidence consisted of the handwritten memorandum, his own affidavit in which
Dunworth states he had no intention to be bound by the handwritten memorandum, Dunworth's
deposition, Chavez's deposition and his attorney's affidavit on fees. 



Was a Binding Contract Formed Through an Agreement on all Essential Terms?

 The only cause of action brought by Chavez was breach of contract. To prove breach of
contract, the following elements must be established: (1) a valid contract exists; (2) the plaintiff
performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was
damaged as a result of the breach. McLaughlin, Inc. v. Northstar Drilling Technologies, Inc., 138
S.W.3d 24, 27 (Tex. App.--San Antonio 2004, no pet.). Chavez moved for summary judgment on
the basis that there was no genuine issue of material fact as to each element of his breach of contract
claim. Dunworth responded by moving for a traditional summary judgment on four affirmative
defenses, (2) and for a no-evidence summary judgment on three elements of Chavez's breach of
contract claim, including the existence of a valid contract. In determining whether the trial court
erred in granting summary judgment in favor of Chavez, we begin by considering whether a valid
contract existed. 

 A binding and enforceable contract exists when there has been: (1) an offer; (2) an
acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each
party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be
mutual and binding. Copeland v. Alsobrook, 3 S.W.3d 598,604 (Tex. App.--San Antonio 1999, pet.
denied) (also noting that consideration is a fundamental element of a binding contract). In
determining whether there was a "meeting of the minds," and thus an offer and acceptance, this court
employs an objective standard based on what the parties said and did, not based on their subjective
states of mind. Komet v. Graves, 40 S.W.3d 596, 601 (Tex. App.--San Antonio 2001, no pet.). To
create a binding, enforceable agreement, the parties must agree on all the essential terms. T.O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992); America's Favorite Chicken
Co. v. Samaras, 929 S.W.2d 617, 622 (Tex. App.--San Antonio 1996, writ denied). It is well
established that parties may agree to the material terms of a contract, and leave other matters open
for later negotiation; it is only when an essential term is left open for future negotiation that no
binding contract exists. T.O. Stanley, 847 S.W.2d at 221; Komet, 40 S.W.3d at 602. Whether an
agreement is legally binding and enforceable is a question of law. America's Favorite Chicken, 929
S.W.2d at 622. Therefore, we must determine, as a matter of law, whether a valid contract was
formed between Dunworth Real Estate and Chavez Properties.

 Dunworth asserts that a valid contract was not formed because the handwritten memorandum
is missing several essential terms necessary to make it a binding and enforceable contract, most
importantly a sufficient description of the real property to be leased and potentially purchased. (3) We
agree. To form a valid, enforceable contract for the sale or lease of real property for longer than one
year, a sufficient written description of the property is required by the Statute of Frauds. Tex. Bus.
& Com. Code Ann. § 26.01 (Vernon Supp. 2007); Long Trusts v. Griffin, 222 S.W.3d 412, 416
(Tex. 2006); Castroville Airport, Inc. v. City of Castroville, 974 S.W.2d 207, 212 (Tex. App.--San
Antonio 1998, no pet.) (essential term of lease is sufficient description of real property). In order
to satisfy the Statute of Frauds, a contract "must furnish within itself, or by reference to some other
existing writing, the means or data by which the [property] to be conveyed may be identified with
reasonable certainty." Long Trusts, 222 S.W.3d at 416; Templeton v. Dreiss, 961 S.W.2d 645, 658
(Tex. App.--San Antonio 1998, pet. denied). "Extrinsic evidence may be used 'only for the purpose
of identifying the [property] with reasonable certainty from the data' contained in the contract, 'not
for the purpose of supplying the location or description of the [property].'" Long Trusts, 222 S.W.3d
at 416 (quoting Pick v. Bartel, 659 S.W.2d 636, 637 (Tex. 1983), and Wilson v. Fisher, 144 Tex. 53,
188 S.W.2d 150, 152 (1945)). When there is existing language in the instrument which furnishes
a key or nucleus description of the property, extrinsic evidence may be used merely as an aid to
identify the property with reasonable certainty, not to supply a missing description. Templeton, 961
S.W.2d at 658-59. A description of real property must be reasonably certain so that a party familiar
with the locality could identify the property to the exclusion of other property. Gates v. Asher, 154
Tex. 538, 280 S.W.2d 247, 248 (1955).

 Chavez's first response on appeal is that the handwritten memorandum contains all the
essential terms of the agreement, including a sufficient property description consisting of the
"commonly known name" of the property; therefore, an enforceable contract was formed upon
execution of the memorandum on May 12, 2006. (4) It is undisputed that the memorandum does not
refer to any other writing, and the only description of the real property within the memorandum is
a reference to "Airport Security Parking." Chavez contends that "Airport Security Parking" is a
sufficient nucleus description because it is the commonly known name of the real property within
the community. See Living Christ Church, Inc. v. Jones, 734 S.W.2d 417, 420 (Tex. App.--Dallas
1987, writ denied) (noting that description of land by particular name by which it is known in the
locality, when supported by pleadings or evidence as to the common name, may be sufficient nucleus
to provide the means or data to identify land with reasonable certainty) (citing Wilson, 188 S.W.2d
at 153). While Chavez makes the assertion in his summary judgment affidavit that the land is
commonly known as "Airport Security Parking," Dunworth, who has owned the real property for
more than thirty years, denies in his affidavit and deposition (5) that the land is known by that name,
maintaining that "Airport Security Parking" is known in the community as a reference to the parking
business, not the real property itself. Therefore, the record shows there was a disputed issue of fact
concerning whether the real property itself is commonly known as "Airport Security Parking,"
making summary judgment inappropriate.

 Moreover, even if the summary judgment evidence was undisputed that "Airport Security
Parking" is the commonly known name of the real property, without more information in the
memorandum to physically locate the property the common name alone in this case was not a
sufficient "nucleus" description. See Reiland v. Patrick Thomas Properties, Inc., 213 S.W.3d 431,
437 (Tex. App.--Houston [1st Dist.] 2006, pet. denied) (purpose of description is to afford a means
of identification, and it must furnish enough information to locate the general area, as by tract survey
and county, and contain information regarding the size, shape and boundaries); see also Rubiolo v.
Lytle, 370 S.W.2d 202, 205 (Tex. Civ. App.--San Antonio 1963, writ ref'd n.r.e.) (property
description in deed was not sufficient nucleus to identify any particular property where it failed to
locate the land by any discoverable point of reference or refer to shape or other identifiable features). 
The memorandum only contains the name "Airport Security Parking," without any reference to a
particular city, county or state, or to a physical address, location or boundary. Despite recognizing
the possibility that a common name may be a sufficient nucleus description, the court in Living Trust
held that property descriptions limited to the names "Broadmoor Garage" and "Fernald Property"
were insufficient to support an action for specific performance in the absence of any reference to the
physical location of the property in the contract, any pleadings and evidence as to the city, county
or state in which the property is located, and any proof that the subject property is the only property
owned by the grantor in that county. See Living Trust, 734 S.W.2d at 420. This is not a case where
all the property owned by Dunworth in the county was subject to the memorandum; Dunworth's
affidavit and deposition provide evidence that he owned other parcels not included in the deal with
Chavez. C.f., Moudy v. Manning, 82 S.W.3d 726, 728 (Tex. App.--San Antonio 2002, pet. denied)
(explaining two-part test under Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222, 223 (1949)). 

 Here, as in Wilson, "every essential element of the [property] description is left to inference
or to be supplied by parole." Wilson, 188 S.W.2d at 154. The extrinsic emails between Chavez and
Burzlaff are not referenced within the May 12 memorandum, and in fact did not exist until after the
memorandum was signed; therefore, they cannot be considered as an aid to clarify the common name
description, even if we were to conclude that it constituted a sufficient nucleus description. (6) See
Long Trusts, 222 S.W.3d at 416; see also Templeton, 961 S.W.2d at 658-59; see also Reiland, 213
S.W.3d at 437-38 (right of first refusal contained an inadequate property description, and extrinsic
evidence supplying metes and bounds based on subsequent survey was inadmissible to aid the
description because the original document contained no reference to the survey). As previously
noted, parol evidence may only be used to explain or clarify the written agreement, not to supply
missing essential terms. Cavazos v. Cavazos, No. 04-06-00451-CV, 2007 WL 3355483, at *3-4
(Tex. App.--San Antonio Nov. 14, 2007, no pet. h.); Elizondo v. Gomez, 957 S.W.2d 862, 864 (Tex.
App.--San Antonio 1997, pet. denied) (citing Texas Builders v. Keller, 928 S.W.2d 479, 481-82
(Tex. 1996)). Moreover, "even when the record leaves little doubt that the parties knew and
understood what property was intended to be conveyed, . . . the knowledge and intent of the parties
will not give validity to the contract and neither will a plat made from extrinsic evidence." Reiland,
213 S.W.3d at 437 (quoting Morrow v. Shotwell, 477 S.W.2d 538, 540 (Tex. 1972)). Based on the
foregoing analysis, we conclude the May 12 memorandum does not contain a sufficient nucleus of
a property description, and use of the subsequent extrinsic emails to clarify the memorandum's
description was not permitted. See In the Estate of Garcia, No. 04-06-00120-CV, 2007 WL 748651,
at *2 (Tex. App.--San Antonio March 14, 2007, pet. filed).

 As a secondary, alternative argument raised in his response to Dunworth's summary
judgment motion and on appeal, Chavez asserts the contract was formed through a series of
documents - the May 12 memorandum plus the May 12 email supplying a metes and bounds
property description, and the May 15 email providing the commencement date; at oral argument,
Chavez's attorney stated that under this argument the contract was not formed until May 15, 2006. 
In support of this position, Chavez relies on general contract law holding that a written contract may
consist of multiple documents. See, e.g., Fort Worth I.S.D. v. City of Fort Worth, 22 S.W.3d 831,
840 (Tex. 2000) (stating it is "well-established law that instruments pertaining to the same
transaction may be read together to ascertain the parties' intent, even if the parties executed the
instruments at different times and the instruments do not expressly refer to each other, and . . . a
court may determine, as a matter of law, that multiple documents comprise a written contract");
Padilla v. LaFrance, 907 S.W.2d 454, 460-61 (Tex. 1995) (noting that written memorandum
required to satisfy Statute of Frauds need not be contained in one document, and holding that series
of letters satisfied rule requiring binding settlement agreement to be in writing); Jones v. Kelley, 614
S.W.2d 95, 98 (Tex. 1981) (holding that four documents related to the sale of real property could be
construed together as one contract which provided a sufficient property description satisfying the
Statute of Frauds); Adams v. Abbott, 151 Tex. 601, 254 S.W.2d 78, 79-80 (1952) (series of letters
formed a contract for sale of farm and contained sufficient property description of land).

 Chavez's argument fails for two reasons. First, Chavez did not sue for specific performance
of a "contract" that was not formed until the May 15 email, or even the May 12 metes and bounds
email. His original petition, as well as his motion for summary judgment, leaves no doubt that
Chavez sued for specific performance of the May 12 handwritten memorandum. Further, as noted,
the trial court's summary judgment order awards specific performance of the May 12 memorandum,
tracking the language verbatim, except for the property description. A party's summary judgment
motion stands or falls on the grounds expressly presented in the motion, and those grounds may not
be expanded by summary judgment evidence or briefing. McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 340-41 (Tex. 1993); Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex.
1993) (summary judgment cannot be affirmed on ground not expressly set out in motion and
presented to trial court). Second, even if we agreed with Chavez that he had sued to enforce the
contract as the memorandum plus the series of emails, the documents as a whole do not establish that
there was ever a "meeting of the minds" as to the particular parcels that were the subject of the
lease/purchase. The series of emails as a whole show there continued to be disagreement between
the parties as to which particular tracts were included in the deal, particularly as to a two acre tract
that Dunworth maintained was never part of the deal. See Komet, 40 S.W.3d at 601. Therefore,
even under Chavez's alternative argument, no contract was formed.

 Conclusion

 We conclude that, as a matter of law, the May 12 handwritten memorandum did not provide
a sufficient nucleus description of the real property, which was an essential element to form a
binding and enforceable contract under the Statute of Frauds; without a sufficient nucleus
description, the extrinsic emails may not be considered to clarify the common name description. 
Further, the series of emails may not be used to supply a missing essential term of the memorandum. 
Finally, Chavez's argument that the contract was formed through the series of emails fails because
Chavez sued for, and was awarded, specific performance of the May 12 memorandum, and, in any
event, the series of emails do not establish a meeting of the minds. Accordingly, we hold that a
binding and enforceable contract did not exist, and the trial court erred in granting summary
judgment in favor of Chavez Properties and in awarding it specific performance. We reverse the trial
court's judgment and render judgment that Chavez Properties take nothing against Dunworth Real
Estate Company. (7)

 Phylis J. Speedlin, Justice



1. On appeal, Dunworth asserts that Burzlaff was not acting as his real estate agent, and had no actual or apparent
authority to bind Dunworth Real Estate Company. Given our disposition of this appeal, we need not address this issue. 

2. Dunworth raised the Statute of Frauds, the Rule Against Perpetuities, the Parol Evidence Rule, and lack of
consideration as affirmative defenses to Chavez's breach of contract claim.
3. Dunworth also claims these other essential terms are missing: a manifestation of his intent to be bound (i.e.,
a "meeting of the minds"); other terms such as the commencement date of the lease, default terms, designation of
improvements, a definition of "gross," etc.; and separate consideration to support the purchase option. Because we
resolve the issue based on the sufficiency of the real property description, we need not address these other terms. 
4. We note that in his original petition, as well as his summary judgment motion, Chavez sought specific
performance based on the May 12 handwritten memorandum. In fact, except for the legal description of the property,
the trial court's summary judgment order tracks the language of the May 12 memorandum term-for-term in awarding
specific performance of the lease/purchase agreement. The parties agree, and the record shows, that the trial court had
to resort to another document outside the May 12 memorandum to obtain the legal description of the property. 
5. Dunworth states in his affidavit that the real property "is leased to Jim Dunworth, Inc., and the property is not
known as Airport Security Parking . . . other operations of Jim Dunworth, Inc. under different names also are conducted
on the . . . property." In his deposition, Dunworth agreed that the entrance signs and billboard on the property say
"Airport Security Parking," the shuttle buses have signs that say "Follow Me to Airport Security Parking," and the
business has distributed a free parking coupon that says "Airport Security Parking;" however, he maintained that all of
those relate solely to the business of "Airport Security Parking," not to the land itself.
6. Chavez's contention that Chicago Title's ability to locate the precise legal description proves the sufficiency
of the property description fails because it is based on using the "Airport Security Parking" name in the memorandum
plus the May 12 "metes and bounds" email. 
7. Dunworth Real Estate Company complains in its brief that Chavez filed a notice of lis pendens against its real
property and asks us to release it; however, the notice of lis pendens is not included in the appellate record, and therefore
the matter is not before us on appeal.