

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00304-CV

**PLATINUM RECOVERY & RECYCLING, LLC**,
Appellant

v.

**A-1 SPECIALIZED SERVICES, INC.**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 12-1428-CV
Honorable William Old, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 15, 2017

AFFIRMED

Platinum Recovery & Recycling, LLC appeals the trial court's take-nothing summary judgment on its claims against A-1 Specialized Services, Inc. The trial court granted summary judgment based on a final settlement of the underlying dispute. On appeal, Platinum contends it raised fact issues that (1) there was no "meeting of the minds" regarding the final settlement; and (2) the final settlement was fraudulently induced. We affirm the trial court's judgment.

## BACKGROUND

A-1 sent several purchase orders for scrap platinum to Platinum, and Platinum shipped several loads to A-1. Upon receiving some of the loads, A-1 made downward adjustments in the sales prices based on its measurements of the loads. Platinum accepted some of A-1's downward adjustments and disputed others.

Platinum sought to settle the dispute with A-1 for $1,123,648.00. According to Platinum, A-1 represented during a telephone conversation that this figure was 80% of the amount owed. a settlement offer Platinum drafted listed seven invoices with an "Open Balance," stated the Open Balance on each, and showed the total Open Balance was $1,891,188.85. The settlement offer states, "Please pay $1,123,648.00 for final settlement on loads mentioned above. If load 149647 import hits 1200 platinum please pay $2 more." A-1 gave Platinum a check for the settlement amount. When A-1 gave Platinum the check for the settlement amount, A-1 also provided documents to Platinum and Platinum further questioned the adjustments A-1 had made. However, Platinum then deposited A-1's check.

Platinum then sued A-1, alleging breach of contract, theft, fraud, and "Money Had and Received." A-1 filed a motion for summary judgment on the ground that the parties had already settled the dispute. In response to A-1's motion, Platinum argued A-1 fraudulently induced Platinum to settle. The trial court granted A-1 summary judgment based on the parties' final settlement. Platinum appeals.

## STANDARD OF REVIEW

"We review a summary judgment de novo." *City of San Antonio v. San Antonio Express-News*, 47 S.W.3d 556, 561 (Tex. App.—San Antonio 2000, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord*

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We take as true all evidence favorable to the nonmovant, resolve all conflicts in the evidence in the non-movants' favor, and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *City of San Antonio*, 47 S.W.3d at 561.

## DISCUSSION

The trial court granted A-1's traditional motion for summary judgment based on the parties' final settlement. Platinum argues it produced evidence raising fact issues that (1) an enforceable contract was not formed because there was no "meeting of the minds"; and (2) the settlement agreement is not enforceable because it was fraudulently induced.

## A. Contract Formation

"For an enforceable contract to be formed, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms." *Bandera Cty. v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App.—San Antonio 2013, no pet.) (internal quotation marks omitted). There is a "meeting of the minds" if there is a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. *Id.* To determine whether there was a "meeting of the minds" regarding the subject matter and essential terms, we use an objective standard, considering what the parties did and said, not their subjective states of mind. *Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.).

In support of its traditional motion for summary judgment, A-1 produced the deposition testimony of Platinum's corporate representative, Chris Legate, and an April 13, 2012 settlement offer drafted and signed by Legate. The settlement offer lists seven invoices, states the "Open Balance" on each, and shows the total Open Balance is $1,891,188.85. Below the list of invoices, Legate handwrote, "Please pay $1,123,648.00 for final settlement on loads mentioned above. If load 149647 import hits 1200 platinum please pay $2 more." During his deposition, Legate

testified Platinum compiled this list from its "receivable books" for A-1. He testified he wrote and signed the document intending it to be "a final settlement." According to Legate, he "had to agree to this to get any payment in any form." Legate testified that at the time of making this agreement, his understanding was that this would be a final payment for the prior shipments. He further testified he received and deposited A-1's check for $1,123,648.00, and A-1 paid the additional $2 for load 149647.

Citing Legate's deposition testimony, Platinum argues it produced evidence raising a fact issue that there was not a "meeting of the minds" because Platinum agreed to settle for "80% of the outstanding amounts due and owing." Legate testified Platinum and A-1 disputed the amount that was owed, and A-1 told him the $1,123,648.00 amount was 80% of the value of the loads. Even if Platinum subjectively believed $1,123,648.00 was 80% of the total amount due, Platinum expressly requested in Legate's April 13, 2012 letter a payment of $1,123,648.00 as a final settlement of a total Open Balance of $1,891,188.85—which is objectively not 80% of the amount owed according to Platinum's records. Objectively, the parties agreed to settle their dispute for $1,123,648.00; subjectively, Platinum believed this was 80% of the amount owed. Because we must use an objective standard, considering what the parties did and said, Platinum's evidence about Legate's subjective state of mind does not raise a fact issue that there was not a "meeting of the minds." *See id.* We hold A-1 conclusively established the parties mutually understood their dispute over A-1's adjustments would be settled if A-1 paid Platinum $1,123,648.00.

## B. Fraudulent Inducement

"Fraudulent inducement is a subspecies of fraud; with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) (internal quotation marks omitted). To prove fraud, "one must prove justifiable reliance on a material misrepresentation."

- 4 -

*Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 401 (Tex. 2014). "A person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (internal quotation marks omitted). "Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context." *AKB Hendrick, LP v. Musgrave Enterps., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.). "A party to an arm's length transaction must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated; a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Id.* (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)).

Citing Legate's deposition testimony, Platinum argues it raised a fact issue that it relied on A-1's knowing misrepresentation that the amount of the settlement agreement was 80% of the amount due and owing. Legate testified there was not a written contract between Platinum and A-1 for the sale of the platinum; A-1 instead issued purchase orders for the scrap platinum. He testified A-1 had made several downward adjustments in the purchase order prices after receiving some shipments. Legate stated he disputed A-1's adjustments and attempted to discuss them with A-1. According to Legate, his telephone conversations with A-1 were "one-sided"; the adjustments were "shoved down [his] throat"; A-1 would "change [its] mind three times a day"; and he "tried to speak to multiple people there on [Platinum's] account, and nobody would help [him]." Legate further testified he based his final settlement offer on A-1's "numbers." He stated he disagreed with and questioned A-1's adjustments because the amount deducted would change, the deductions did not "make sense," and A-1 "couldn't explain anything." Legate testified he "made the agreement without seeing the numbers that [he] needed to make an agreement." He further

testified, "I was under the impression that these people were supposed to be good people that took care of people and did exactly what they said they did, and it never happened."

The summary judgment evidence establishes Platinum's transactions with A-1 were arm's length transactions between two businesses; thus, Platinum was required to exercise ordinary care for the protection of its own interests and was charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. *See AKB Hendrick*, 380 S.W.3d at 232. Platinum's records reflected the amount A-1 owed and its "final settlement" offer stated the total amount owed was $1,891,188.85. The settlement amount of $1,123,648.00 was not 80% of the total "Open Balance" amount according to Platinum's own records. Although Legate testified he relied on A-1's "numbers" and believed he was transacting with "good people" at A-1, Platinum's confidence in the honesty and integrity of A-1 did not excuse Platinum's failure to exercise reasonable diligence in keeping its records and making a settlement offer. *See id.*

The summary judgment evidence also establishes Platinum's offer to settle and A-1's representation was made in an adversarial context of resolving a business dispute about the amount A-1 owed to Platinum. According to Legate, A-1's position was unclear and constantly changing; the parties' conversations were one-sided; and A-1 repeatedly evaded making a payment for the total disputed amount owed. We hold these are "red flags" indicating Platinum's reliance on A-1's representations about what A-1 owed Platinum was unwarranted. *See Grant Thornton LLP*, 314 S.W.3d at 923; *AKB Hendrick, LP*, 380 S.W.3d at 232. Because there is no evidence of justifiable reliance, we hold Platinum failed to raise a fact issue that the final settlement is unenforceable due to fraudulent inducement.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice