NO. 07-08-0344-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 12, 2010

_____


ASHLEIGH M. SMITH, APPELLANT

V.

ALDERSON ENTERPRISES, L.P., APPELLEE

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-539,137; HONORABLE RUBEN REYES, JUDGE

_____


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**


Appellant, Ashleigh M. Smith, brought a declaratory judgment, breach of contract, and tort action against Appellee, Alderson Enterprises, L.P. Following a jury determination that Smith entered into a legally enforceable contract with Alderson to purchase a new car, the trial court found that Smith breached the contract and awarded

damages to Alderson. In a single point of error, Smith asserts the trial court erred by upholding the jury determination and denying Smith's motion for judgment notwithstanding the verdict. We affirm.

## Background

In 2004, Smith purchased a Lexus RX330 from Alderson, a car dealership located in Lubbock, Texas. In April 2007, she brought the RX330 to Alderson for repairs and began shopping for a replacement car. On April 5, she asked an Alderson salesman to put some numbers together on a Mercedes ML350 and, two days later, she returned with her husband to look at the Mercedes ML350 and a Lexus IS250. On April 12, Smith met with Jimmy Myatt, the Alderson car salesman who originally sold her the RX330, and after test driving three vehicles, she asked Myatt to put some numbers together on the Lexus IS250.

After further negotiations, Myatt and Smith agreed on a price for the IS250 and the trade-in value of her RX330. After determining the cash payoff to ABC Bank on her trade-in, Myatt determined the net purchase price and filled out a buyer's order form. With a cash down payment of ten thousand dollars, under the "Total Payments" heading, three financing scenarios were described. One scenario calculated payments of $661.28 per month for thirty-six months without assigning an interest rate.[1] The two

---

[1] Although the interest rate was not stated, it was calculable from the figures provided. The subsequently signed typewritten buyer's order form and Motor Vehicle Installment Sales Contract both reflect that a 6.1% APR was applied to arrive at 36 monthly payments of $661.28.

remaining scenarios calculated monthly payments for forty-eight and sixty months at 6.9% interest.

Once Myatt obtained Smith's agreement to the figures on the handwritten buyer's order form, he took the form to Glen Garnett, Alderson's new car sales manager. After Garnett initialed the order ("OK by GG"), Myatt introduced Smith to Sharla Snuggs, Alderson's financial services manager. Myatt testified he had sold the IS250 to Smith before he introduced her to Snuggs.[2]

While Smith was in Snuggs's office, the handwritten buyer's order form was typed. All of the numbers on the typewritten form were the same with the exception that the forty-eight and sixty month financing options at 6.9% were eliminated and financing at 6.1% for thirty-six months, with payments of $661.28 per month, was typed on the form. The form also indicated a cash payment of ten thousand dollars and provided that Toyota Motor Credit Corporation would finance the balance due. Smith signed the typewritten form.

Smith also signed a multitude of other sale documents while she was in Snuggs's office. One document was a power of attorney unconditionally permitting Alderson to transfer ownership of the RX330 to another buyer. Smith signed as the RX330's "seller"

---

[2]Myatt's testimony was corroborated by Snuggs's testimony that she does not negotiate deals. According to Snuggs, "They don't come into my office unless they have agreed to buy the car and they want the car. My job is just to formalize the process."

3

and Alderson signed as "buyer."[3]   In addition to the power of attorney, Smith also signed an odometer disclosure statement for the RX330, as "transferor"; an arbitration agreement as "buyer"; an application to register and title the IS250 as "purchaser" with Toyota Motor Credit Corporation as the "first lien holder"; a credit application for purchase of the IS250 as "applicant"; a Motor Vehicle Retail Installment Sales Contract as "buyer;" and a privacy notice to protect against Alderson's disclosure of nonpublic information as "customer."

Snuggs understood Smith wanted the vehicle titled to reflect her husband as a co-buyer; therefore, she gave Smith a number of documents for Dr. Smith's signature and asked Smith to mail them back to Alderson when they were completed.[4]   Subsequently, Smith took delivery of the IS250.   Alderson affixed a "red tag" on the car that indicated Alderson had sold the IS250 to Smith as "Buyer."[5]   Thereafter, Smith transferred her personal items from the RX330 to the IS250, and drove home to Clovis, New Mexico.

---

[3]The RX330 was titled in Smith's name only.

[4]The following documents were marked for Dr. Smith's signature: the Motor Vehicle Retail Installment Sales Contract as "co-buyer" and attached notice to co-signer; the typewritten buyer's order form; arbitration agreement as "buyer"; application for vehicle title and registration as "2nd registered owner"; credit application as "co-applicant"; and privacy notice as "co-customer."

[5]Myatt testified a "black tag" is placed on a vehicle being test driven because the "black tag" indicates Alderson owns the vehicle.   Paul Scott, Alderson's general manager, testified that Alderson's dispensation of "red tags" to salesmen is regulated by the dealership and the State.   Scott testified that, "[i]n the history of Alderson's dealership, there has never been a time when they affixed a red tag to a vehicle for a test drive."

4

After her arrival, Dr. Smith reviewed the paperwork for the car. He contacted Snuggs and asked her to redo the paperwork so the IS250 could be titled to "Smith Chiropractic Center, P.A." with him as personal guarantor. Snuggs re-drafted the paperwork and sent the package to Dr. Smith by Federal Express.[6]

Less than one week later, on April 18, the Smiths were involved in an accident while driving the IS250.[7] The next day, Smith drove the damaged IS250 to Alderson and attempted to return the vehicle, insisting that she was merely test driving the vehicle and had not purchased it. Prior to her arrival, Smith had not informed anyone at the dealership of the accident.

Myatt looked at the damaged IS250 and attempted to advise Smith on the process for submitting an insurance claim. At Myatt's behest, Paul Scott, Alderson's general manager, became involved. Scott suggested that Smith have an estimate of damages prepared by a nearby body shop. Smith drove the car to the body shop where they estimated the damages could be repaired for five thousand dollars. Thereafter, Smith returned to the dealership, left the IS250, and departed.

Later, Dr. Smith called Scott. Scott informed Dr. Smith that his wife had purchased the IS250; however, he did offer to assist with filing an insurance claim and

---

[6]Neither Smith nor Dr. Smith ever executed these papers.

[7]The police report listed the owner of the IS250 as "Smith Chiro."

5

trade-in of the IS250 on another vehicle. Dr. Smith informed Scott that he was calling his attorney.

In May, Alderson sold the RX330 and paid off the remaining balance of Smith's loan to ABC Bank. Snuggs testified Alderson fulfilled its end of the bargain, *i.e.,* sold Smith the IS250 for the agreed upon price of $36,000, allowed Smith the agreed upon trade-in value of $21,000 on her trade-in, delivered the IS250 to Smith, and paid off the balance of the debt owed to ABC Bank by Smith on the RX330.

Also in May, Smith filed her amended petition for declaratory judgment, conversion, breach of fiduciary duty, and permanent injunctive relief. In addition to tort and contractual remedies, Smith sought a declaration from the trial court that no binding contract to purchase the IS250 existed between Smith and Alderson. Alderson counterclaimed for damages due to breach of contract.

Following a four day trial, the jury found that "Smith and Alderson Enterprises, L.P., enter[ed] into an agreement for the purchase of a 2007 Lexus Model IS250 on April 12, 2007." In its judgment issued July 29, 2008, the trial court found that Smith breached the contract of sale and awarded damages to Alderson. After Smith's motion for judgment notwithstanding the verdict was denied by the trial court, this appeal followed.

## Discussion

Smith asserts the trial court erred, as a matter of law, by upholding the jury's determination that a legally enforceable contract existed between Smith and Alderson, and denying Smith's motion for judgment notwithstanding the verdict. Smith asserts no contract existed because her husband did not review and sign the sale documentation or approve the car. Smith also asserts the typewritten buyer's order, signed by her, was not a contract document because a term varied from the prior handwritten buyer's order and the typewritten buyer's order was not signed by the dealership. Alderson asserts Smith agreed to buy the car, signed all the necessary documentation, and accepted delivery.

### I.      Standard of Review

We review declaratory judgments under the same standards as other judgments and decrees. *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex.App.–Houston [14th Dist.] 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Id.*

In reviewing rulings on motions for judgment notwithstanding the verdict, appellate courts apply the no-evidence standard. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *McGuire, Craddock, Strother & Hale, P.C. v. Transcontinental Realty Investors, Inc.*, 251 S.W.3d 890, 894 (Tex.App.–Dallas 2008, pet. denied). The court reviews the evidence and must credit the favorable evidence if reasonable jurors would

and disregard contrary evidence unless reasonable jurors would not. *City of Keller*, 168 S.W.3d at 826-27. A challenge to the legal sufficiency of the evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla. *Kroger Texas Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). That is, the evidence offered to establish a vital fact must not be "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Therefore, the focus of our inquiry is whether the jury's determination that a legally enforceable contract existed between Smith and Alderson is supported by legally sufficient evidence.

Further, when parties offer conflicting testimony, particularly on an issue such as intent, the jury has the exclusive responsibility to determine the credibility of the witnesses, the weight to be given their testimony; *Serv. Corp. Int'l v. Aragon,* 268 S.W.3d 112, 118 (Tex.App.–Eastland 2008, pet. denied); *Brown v. Taylor*, 210 S.W.3d 648, 672-73 (Tex.App.–Houston [1st Dist.] 2006, no pet.), and resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses. *Banks v. Columbia Hosp. at Medical City Dallas Subsidiary, L.P.*, 233 S.W.3d 64, 67-68 (Tex.App.–Dallas 2007, pet. denied). Where the jury believes one party's version of the events underlying the action over another, we cannot substitute our judgment or opinion for that of the jury. *Lofton v. Tex. Brine Corp.*, 720 S.W.2d 804, 805 (Tex. 1986). *See Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385, 404 (Tex.App.–Houston [1st Dist.] 2004, pet. dism'd by agr.). In other

words, the jury's determination of the intent of the parties, or the lack thereof, is entitled to almost total deference.

## II.     Contract

In its simplest terms, a contract is established when proven by a preponderance of the evidence that an offer is accepted, accompanied by consideration. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39-40 (Tex.App.–Amarillo 2008, pet. denied).   To determine whether there was an offer and acceptance, and therefore a "meeting of the minds," courts use an objective standard, concerning what the parties did and said, not their subjective states of mind.   *See Komet v. Graves,* 40 S.W.3d 596, 601 (Tex.App.--San Antonio 2001, no pet.).

"Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex.App.–Dallas 1999, pet. denied). Where this element is contested, as here, the determination of the existence of a contract becomes a question of fact.   *Hallmark v. Hand*, 885 S.W.2d 471, 476-77 (Tex.App.–El Paso 1996, writ denied).

Further, parties may agree to the material terms of a contract but leave other matters open for later negotiation; it is only when an essential term is left open for future negotiation that no binding contract exists.   *Kelly v. Rio Grande Computerland Group*,

9

128 S.W.3d 759, 766 (Tex.App.–El Paso 2004, no pet.); *Komet v. Graves*, 40 S.W.3d at 602. Written contracts may also consist of multiple documents; *City of Houston v. Clear Channel Outdoor, Inc.*, 233 S.W.3d 441, 445 (Tex.App.–Houston [14th Dist.] 2007, no pet.), and writings may be considered together if they pertain to the same transaction. *City of Keller,* 168 S.W.2d at 811*. See Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) (separate instruments executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument and construed together). In addition, if one party signs a contract, the other may accept by his or her acts, conduct, or acquiescence in the terms of the contract. *DeClaire v. G. & B. McIntosh Family Ltd. P'ship,* 260 S.W.3d 34, 44 (Tex.App.--Houston [1st Dist.] 2008, no pet.) (collected cases cited therein).

Here, there is more than a scintilla of evidence supporting the jury's determination that Smith entered into a contract to purchase the Lexus IS250 from Alderson. When Myatt presented Smith with the handwritten buyer's order initialed by his sales manager, Alderson made an offer to sell the IS250 to Smith. The offer contained the essential financial elements of the agreement, the sales price, the trade-in value of her RX330, the down payment, and three optional financing arrangements. Smith accepted Alderson's offer on terms identical to those offered in the handwritten buyer's order when she signed the typewritten buyer's order.[8] The sole difference being that, in her acceptance of the

---

[8]That the type-written buyer's offer disclosed an interest rate at 6.1% is immaterial because the payment term, thirty-six months, and monthly payment, $661.28, remained the same as that disclosed in the handwritten buyer order.

typewritten terms, Smith chose between the three methods of financing offered in the handwritten buyer's order.[9]

That a contract formed was also evidenced by the parties' actions after the type-written buyer's order was executed by Smith. Smith executed a power of attorney unconditionally authorizing Alderson to sell her trade-in vehicle and transfer ownership. Alderson delivered the new IS250 to Smith. Smith accepted the new car, removed her possessions from the RX330, placed them in the IS250 and drove to New Mexico with a temporary license tag indicating she had bought the car from Alderson.

Relying upon *Gilbert v. Texas* and portions of Snuggs's testimony, Smith asserts there was no contract to sell the IS250 because Dr. Smith did not sign the sale and financing documents.[10] Snuggs's testimony, however, is equally consistent with the notion that, if Dr. Smith did not sign the sales contract or financing statement, he would not be shown on the title as a co-buyer. Snuggs also testified that Smith agreed to buy

---

[9]Pursuant to the terms of the buyer's order, Alderson retained the option of cancelling the contract if the dealership could not obtain approval of the order's terms from a bank or finance company. While Smith would treat this contract provision as a condition precedent, the provision is a condition subsequent, *i.e.,* a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he or she chooses to avail themselves of the condition. *Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 524 (Tex.App.–Amarillo 1998, pet. denied); *Rincones v. Windberg*, 705 S.W.2d 846, 848 (Tex.App.–Austin 1986, no writ). *See* Black's Law Dictionary 312 (8th ed. 2004). Further, although, as Smith suggests, the buyer's order is an offer, its express language provides that the order "becomes an agreement with dealer when it is accepted by dealer or its authorized representative."

[10]*Gilbert v. Texas*, 218 S.W.2d 906 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.) is of no assistance to Smith. In *Gilbert*, the court found there was no meeting of the minds and, hence, no contract where the alleged contracting document was a letter indicating that a certain party had been accepted as a purchaser of the property but also indicated the property was being offered to another prospective purchaser and expressed an intent to hold further negotiations. *Id.* at 941-42.

11

the IS250 and the financing agreement was sent to her husband to co-sign. She further testified that the documents were not sent to Dr. Smith "to review but to sign and return back." Scott testified the buyer's order is the actual sales agreement, not the financing agreement. He further testified Alderson considered the sale of the car to Smith a "done deal" whether or not Dr. Smith signed off on the sales agreement or financing agreement. Myatt's testimony regarding whether Smith bought the car is compatible with the testimony of Snuggs and Scott.[11]

Smith accepted Alderson's offer and undertook to perform the contract as it was prepared, executed, and delivered. *See Centennial Royalty Company v. Byrd & Foster Drilling, Inc.*, 464 S.W.2d 420, 422-23 (Tex.Civ.App.–El Paso 1971, no writ). *See also Krupp Organization v. Belin Communities, Inc.,* 582 S.W.2d 514, 518-19 (Tex.Civ.App.–Houston [1st Dist.] 1979, writ ref'd n.r.e.). That her husband, Dr. Smith, was listed as a buyer on upper portions of the buyer's order form does not prevent a binding contract to purchase the IS250 from being formed as between Smith and Alderson unless the parties agreed that Dr. Smith's signature was a prerequisite, or condition precedent, to the formation of a binding contract.

---

[11]Even if, as Smith suggests, Snuggs's testimony did conflict with the jury's finding and/or the testimony of her co-workers, we must defer to the jury's determinations regarding the credibility of witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). A court of appeals cannot "pass upon a witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

12

### III.	Condition Precedent

Smith asserts there was no meeting of the minds on the sale of the new car because she "understood" there could be no contract to purchase the car *until* her husband had signed the paperwork and "was otherwise satisfied with the car."[12]	In essence, Smith contends her husband's signature and satisfaction were conditions precedent to the existence of a contract for the purchase of the new car.

A condition precedent may be a condition to the formation of a contract. *Hohenberg Bros. Co. v. George E. Gibbons,* 537 S.W.2d 1, 3 (Tex. 1976). *See Progressive County Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 814-15 (Tex.App.–San Antonio 2006, pet. denied).	In order to make performance specifically conditional, a term such as "if," "provided that," "on condition that," or some similar phrase of conditional language must normally be included in the contract. *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990).	Although there is no requirement that such phrases be utilized, their absence is probative of an intention that a promise be made rather than a condition imposed.	*Hohenberg*, 537 S.W.2d at 3.	*See Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 281

---

[12]Smith repeatedly testified at trial that she "understood" she was signing the paperwork to take the car for a test drive to New Mexico where her husband could look at the car.	Myatt and Snuggs testified Smith did not tell them she was taking the car to New Mexico for a test drive.	Further, the jury's verdict indicates they relied on the testimony of Myatt and Snuggs while disregarding Smith's testimony.	It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of the witness's testimony.	*See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 797 (1951).

(Tex.App.–Houston [14th Dist.] 2006, no pet.). And, because of their harshness, conditions precedent are not favored in the law. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636 (Tex. 2008); *Hirshfeld*, 201 S.W.3d at 281.

Here, there is no express contractual provision creating any condition precedent asserted by Smith.[13] Nevertheless, where one party testifies that a contract was conditioned upon the happening of an event and the other party denies the existence of such a condition,[14] as we have here, the evidence raises an issue of fact to be decided by the jury. *Turboff v. Gertner, Aron & Ledet Investments,* 763 S.W.2d 827, 830 (Tex.App.–Houston [14th Dist. 1988, writ denied) (conflicting testimony on issue whether party's signature was a condition precedent to a contract raises a fact issue); *Perry,* 377 S.W.2d at 771.[15] Although Smith testified it was her "understanding" or "assumption" there would be no contract until her husband signed the documents or expressed his satisfaction with the car, there is no evidence of record indicating she voiced her

---

[13]Thus, neither *In Re Bunzl USA, Inc.*, 155 S.W.3d 202 (Tex.App.–El Paso 2004, no pet.) nor *Davis v. Phillips A. Ryan Lumber Co.,* 248 S.W. 448 (Tex.Civ.App.–Texarkana 1923, writ dism'd w.o.j.) are of any assistance to Smith. In *Bunzl*, the court held that the parties did not intend to be bound until the parties signed a contract that contained a blank signature block and an express provision requiring all modifications and amendments to the contract to be in writing and signed by the parties to be effective. *Id.* at 211. Here, Alderson signed a handwritten buyer's order with the same terms as that subsequently signed by Smith. Moreover, there was no blank signature line for Dr. Smith *and* the buyer's order did not contain an express provision similar to that in *Bunzl*. In *Davis*, aside from other distinguishing factors, the contract at issue there contained express stipulations requiring the assent of all three parties to a contract that was strictly unilateral. *Id.* at 450.

[14]"It is generally held that a conditional delivery of a writing may be shown by parol testimony if the conditional delivery establishes a condition precedent rather than a condition subsequent." *Perry v. Little*, 377 S.W.2d 765, 769 (Tex.Civ.App.–Dallas 1964, writ ref'd n.r.e.).

[15]*See also RSM Production Corporation v. Vintage Petroleum, Inc.*, No. 14-07-00563-CV, 2008 WL 4657735, *4-6 (Tex.App.–Houston [14th Dist.] 2008, no pet.) (not designated for publication).

14

"understanding" to anyone or that anyone at Alderson agreed with this proposition. Rather, Myatt, Snuggs, and Scott all testified Smith unconditionally purchased the car. Thus, even if Smith's testimony created a conflict in the record, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511-12 (1947).

In addition to asserting that a sales agreement could not be premised on the buyer's orders, Smith also asserts the "Motor Vehicle Retail Installment Sales Contract" was not a valid sales agreement between Smith and Alderson because the document was not executed by either Dr. Smith or Alderson. Having already determined that the buyer's order form is sufficient indicia of an agreement between Smith and Alderson, we need not decide the enforceability of the MVRISC as further evidence of that agreement. The jury was asked simply to determine whether "Smith and Alderson Enterprises, L.P., enter[ed] into an agreement for the purchase of a 2007 Lexus Model IS250 on April 12, 2007," and we find there is more than a scintilla of evidence to support their determination.[16]

---

[16]Because the jury's charge was not challenged or excepted to and there were no special issues suggested by either party, "we must conclude that all controversial issues of fact were correctly submitted to the jury, and the judgment of the trial court forecloses all other issues that should have been submitted." *Tarlton v. Trezevant & Cochran*, 165 S.W.2d 514, 516 (Tex.Civ.App.–Dallas 1942, writ ref'd w.o.m.). *See also* Tex. R. Civ. P. 272 ("All objections not so presented shall be considered as waived."); Tex. R. Civ. P. 273 (proposed jury instructions "shall be prepared and presented to the court and submitted to opposing counsel for examination and objection").

Although Smith also asserts there was no contract because she did not read the documents before she signed them, she does not claim she was tricked or defrauded. She testified that neither Myatt nor Snuggs were "high-pressure" or pressured her into a sale. Further, she spent nearly four hours with the documents in Snuggs's office while speaking with her husband on the telephone. As such, she is charged with knowledge of all the terms of the documents she signed. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 134 (Tex. 2004). *See Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 791 (Tex.App.–Fort Worth 2008, no pet.). "[P]arties to a contract have an obligation to protect themselves by reading what they sign." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1963).

Because there is more than a scintilla of evidence to support the jury's finding that Smith and Alderson did enter into an agreement for the sale of the IS250, Smith's single point of error is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

16