ACCEPTED
03-16-00310-CV
14438625
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/23/2016 10:28:10 AM
JEFFREY D. KYLE
CLERK

# NO. 03-16-00310-CV

_____

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/23/2016 10:28:10 AM
JEFFREY D. KYLE
Clerk

T. DAVID YOUNG
Appellant,

v.

PLAINSCAPITAL BANK,
Appellee.

_____

On Appeal From the 353rd District Court, Travis County, Texas
Trial Court Case No. D-1-GN-14-004656
Hon. Gisela Triana, Presiding

_____

## BRIEF OF APPELLEE PLAINSCAPITAL BANK

_____

Steven R. Shaver
State Bar No. 18136550
sshaver@fjrpllc.com
FISHMAN JACKSON RONQUILLO
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, Texas 75240
Tel. (972) 419-5500
Fax. (214) 432-6688

ATTORNEYS FOR APPELLEE
PLAINSCAPITAL BANK

## STATEMENT ON ORAL ARGUMENT

Appellee PlainsCapital Bank does not believe that oral argument is warranted as this is not a unique case and is addressed by well-settled precedent. *See* Tex. R. App. P. 39.8. This case is appropriate for a memorandum opinion disposition without the need for oral argument. *See* Tex. R. App. P. 47. If the Court grants oral argument, however, Appellee requests an opportunity to present argument as well.

## IDENTITY OF PARTIES AND COUNSEL

Appellee PlainsCapital Bank certifies that the following is a complete list of parties, attorneys, and any other persons who have any interest in the outcome of this lawsuit:

**Appellants**                    T. David Young ("Young")

**Appellants' Counsel:**      Stephen Casey
State Bar No. 24065015
info@caseylawfirm.us
Casey Law Firm Office, PC
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
Tel. (512) 257-1324
Fax. (512) 853-4098

**Appellee**                   PlainsCapital Bank ("PlainsCapital")

**Appellee's Counsel:**       Steven R. Shaver
State Bar No. 18136550
sshaver@fjrpllc.com
FISHMAN  JACKSON RONQUILLO
13155 Noel Road, Suite 700
Dallas, Texas  75240
Tel. (972) 419-5500
Fax. (214) 432-6688

# TABLE OF CONTENTS

Statement on Oral Argument . . . . . . ii

Identity of Parties and Counsel . . . . . . iii

Table of Contents . . . . . . . iv

Index of Authorities. . . . . . . . v

Statement of the Case . . . . . . . vii

Issues Presented (Restated) . . . . . . viii

Introduction . . . . . . . . . 1

Statement of Facts . . . . . . . . 4

Summary of Argument . . . . . . . 10

Argument and Authorities . . . . . . 12

Conclusion and Prayer . . . . . . . 30

Certificate of Compliance . . . . . . 31

Certificate of Filing and Service . . . . . 32

Appendix . . . . . . . . . 33

# INDEX OF AUTHORITIES

*A.    Cases*

*Adams v. H & H Meat Prods., Inc.,* 41 S.W.3d 762, 771 (Tex. App.--Corpus Christi 2001, no pet.)    .    .    .    .    .    .    .    .    . 11

*Angelou v. African Overseas Union,* 33 S.W.3d 269, 278 (Tex. App.--Houston [14th Dist.] 2000, no pet.)    .    .    .    .    .    .    .    11, 12

*Boone R. Enters., Inc. v. Fox Television Stations, Inc.,* 189 S.W.3d 795, 796 (Tex. App.—Dallas 2005, no pet.)    .    .    .    .    .    .    .    . 10

*Boudreau v. Fed. Trust Bank,* 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied)    .    .    .    .    .    .    .    .    .    .    . 12

*Castroville Airport, Inc. v. City of Castroville,* 974 S.W.2d 207, 212 (Tex. App.--San Antonio 1998, no pet.)    .    .    .    .    .    .    .    . 26

*Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex. 1996)    .    . 10

*City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005)    .    .    . 12

*Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex. 1978)    .    .    . 26

*Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997)    .    .    . 10

*Dobson v. Metro Label Corp.,* 786 S.W.2d 63, 65 (Tex. App. – Dallas 1990, no writ)    .    .    .    .    .    .    .    .    .    .    .    . 26

*Engleman Irrigation v. Shields Bros.,* 960 S.W.2d 343, 352 (Tex. App.—Corpus Christi 1997, pet. denied)    .    .    .    .    .    .    13, 14, 20

*English v. Fischer,* 660 S.W.2d 521, 524, 27 Tex. Sup. Ct. J. 74 (Tex.1983)  . 22

*Fretz Construction Company v. Southern National Bank,* 626 S.W.2d 478 (Tex. 1981)    .    .    .    .    .    .    .    .    .    .    .    23

*Humble Oil & Refining Co. v. Harrison,* 205 S.W.2d 355 (Tex. 1947) .       16

*Komet v. Graves,* 40 S.W.3d 596, 600 (Tex. App.--San Antonio 2001, no pet.)
.     .     .     .     .     .     .     .     .     .     .     11, 12, 27

*Long Trusts v. Griffin,* 222 S.W.3d 412, 416 (Tex. 2006) .     .     .     . 26

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848
(Tex. 2009) .     .     .     .     .     .     .     .     .     .     . 12

*"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex. 1972) . 22

*Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex. 1982) .     .     .     . 22, 24, 12

*Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985)     .     . 12

*Potcinske v. McDonald Prop. Invs., Ltd.,* 245 S.W.3d 526, 530 (Tex. App. Houston
1st Dist. 2007)     .     .     .     .     .     .     .     .     . 11, 12

*Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 192 (Tex.
2007) .     .     .     .     .     .     .     .     .     .     .     . 10

*T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992).   12

*United Concrete Pipe Corp. v. Spin-Line Co.,* 430 S.W.2d 250, 254 (Tex. 1968) .
.     .     .     .     .     .     .     .     .     .     .     .14, 17, 20

*Wal-Mart Stores v. Lopez,* 93 S.W.3d 548, 555-556 (Tex. App.--Houston [14th
Dist.] 2002)     .     .     .     .     .     .     .     .     .     . 11

*Weynand v. Weynand,* 990 S.W.2d 843, 846 (Tex. App.--Dallas 1999, pet. denied)
.     .     .     .     .     .     .     .     .     .     .     . 12


B.     Rules and Statutes

Tex. R. Civ. P. 166a(c)     .     .     .     .     .     .     .     . 12

TEX. BUS. & COM. CODE § 26.01 et. seq.     .     .     .     . 26

vi

# STATEMENT OF THE CASE

*Nature of the Case*

This appeal involves a question of promissory estoppel decided by the trial court by way of summary judgment. Here, a potential buyer of real estate [Appellant Young] claims the seller [Appellee PlainsCapital] had come to agreement on all material terms and only lacked a signed-written agreement. The undisputed facts show that there was not a meeting of the minds with respect to all of the material terms of the agreement.

*Course of Proceedings and Trial Court's Disposition*

On November 6, 2014, Young filed suit against PlainsCapital. On November 7, 2014, Young recorded a Lis Pendens, clouding title to PlainsCapital's property. On November 21, 2014, PlainsCapital filed an Emergency Motion to Expunge the Lis Pendens ("Emergency Motion") so that PlainsCapital could close on the sale of the property with Travis County.

On February 5, 2015, District Court Judge Sulak granted PlainsCapital's Emergency Motion and expunged the Lis Pendens.

On April 3, 2015, Young filed his Plaintiff's Motion for Partial Summary Judgment. PlainsCapital responded on May 7, 2015, by filing its Cross Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment.

On July 1, 2015, the Trial Court considered Young's Motion for Partial Summary Judgment and denied same by order of April 21, 2016.

On April 11, 2016, the Trial Court considered PlainsCapital's Cross Motion for Summary Judgment and granted same by order of April 21, 2016.

On May 9, 2016, Young filed his notice of appeal.

# ISSUES PRESENTED (RESTATED)

Issue One: The trial court did not err in granting PlainsCapital's Cross Motion for Summary Judgment finding that there was *no* acceptance by PlainsCapital of the alleged written contract terms.

Issue Two: The trial court did not err in granting PlainsCapital's Cross Motion for Summary Judgment on Young's promissory estoppel claim because the evidence showed, as a matter of law, that there was no acceptance and no promise to sign, oral or otherwise, of an alleged complete and written contract.

Issue Three: The trial court did not err in granting PlainsCapital's Cross Motion for Summary Judgment nor in denying Young's Motion for Summary Judgment because there is no material factual dispute over the substance of a telephone call. Young stated under oath that PlainsCapital, through its agent Denton, only agreed to terms with respect to an addendum; not the entire contract as Young now claims.

## INTRODUCTION

PlainsCapital was presented a purchase agreement for a parcel of land in Travis County by Young. PlainsCapital and Young never came to terms and a purchase agreement was not signed. Then, nearly a year after Young's last communication with PlainsCapital, Young filed suit claiming he actually did have a contract with PlainsCapital to purchase real estate.

This Court should affirm the trial court's judgment as the uncontroverted summary judgment evidence showed that there was no acceptance and no promise to sign a completed written contract.

In this case, there were two separate components to the "contract" for the purchase of real estate: the first was the Purchase Agreement (C.R. 134-157) and the second was an Addendum (C.R.158-168); collectively from time to time "contract" or "agreement." Both components required acceptance for a contract but PlainsCapital never agreed to the terms of both or either component.

The determining issues in this case are (i) whether PlainsCapital's statement that the Purchase Agreement "appeared acceptable but they would like for us to rework the addendum" constituted a clear and definite acceptance and/or a rejection; (ii) whether on October 4 after PlainsCapital requested an "executable version" of the contract constituted a clear and definite acceptance, and; (iii)

1

whether on October 7 the addition of the definition of "affiliate" in the addendum by Young constituted a rejection and counteroffer.

Additionally, since this case is an unsigned real estate transaction under the Statute of Frauds, Young must also show PlainsCapital promised to sign the written contract. Objectively, there is no evidence PlainsCapital made a clear and definite acceptance of the terms of the contract and there is no evidence of a promise by PlainsCapital to sign Young's contract.

Young's backup argument is that there is at least a fact issue with respect to a telephone call between Young and PlainsCapital employee Denton on October 4, 2013, that is determinative of contract acceptance. Again, Young claimed in his affidavit that there was a conversation between him and Denton and, according to Young, Denton said the "contract was complete in every way and would be signed." In Denton's deposition, he denied the conversation ever happened. However, the issue can be decided not on whether it occurred or not, it probably did not but not relevant for deciding the issue, but based upon Young's "other" testimony concerning this "call."

Young claimed in his affidavit that Denton told him: "we had a deal and [PlainsCapital] would sign the contract." But, under oath at deposition Young sang a different tune by testifying the telephone call was only about the addendum, not

the complete contract. The alleged fact issue is created by Young, which is not a basis for finding a fact issue. This Court should affirm the judgment in all respects.

## STATEMENT OF FACTS

**A.     PlainsCapital and the Property**.

On or about September 13, 2013, PlainsCapital acquired certain real property in Travis County Texas (the "Property") (approximately 272 acres) from the Federal Deposit Insurance Company ("FDIC") as Receiver of First National Bank ("FNB") by way of a purchase and assumption agreement. C.R. 388-390, 575, 579-80. It is undisputed that after September 13, 2013, PlainsCapital was the owner of the Property.

In the sale of PlainsCapital's real estate, PlainsCapital's REO (Real Estate Owned) committee (the "Committee") must approve all real estate sales contracts. C.R. 277-79, 578, 580. Young understood that the Committee must approve all contracts for the sale of real estate. C.R. 479, 485. Further, Young understood that Denton could not sell the Property without Committee approval, especially considering his prior history with Denton. *Id*. Ultimately, neither PlainsCapital nor its Committee approved the sale of the Property to Young or the sales contract submitted by Young. C.R. 357.

**B.     Young's offer to purchase the Property**.

After September 13, 2013 (the date PlainsCapital acquired the property from the FDIC), Sean Denton (a PlainsCapital employee) was the point of contact at PlainsCapital regarding the sale of the Property. C.R. 434-5.  Denton typically

communicated to prospective buyers that all real estate sales required the bank's committee approval, which Denton had previously communicated to Young. C.R. 580-1, 585, 603, 621.

On September 18, 2013, Young, Tate Chiles ("Chiles") (Young's agent) and Denton met to talk about a new offer by Young to purchase the Property. C.R. 179-81, 611. Young had previously submitted two other contracts for purchase to FNB prior to PlainsCapital's acquisition of the Property, both of which Young failed to close. C.R. 422.

Denton communicated to Young on September 18, 2013, that he needed the Bank's Committee approval on terms to sell the Property. C.R. 611. Additionally at that time, Denton was unsure of his position and authority at PlainsCapital; he communicated his concern to Young and reinforced the requirement that all sales contracts must be approved by the Committee. C.R. 602.

Later that day, on September 18, 2013, Young submitted a contract for the purchase of the Property to Denton for PlainsCapital's consideration. C.R. 179-81.

On September 24, 2013, Denton communicated to Young via email that Denton "received a response this morning that all the terms *appeared* acceptable but that they would like for us to rework the addendum…." C.R. 391 (emphasis added). Denton did not have the Committee's approval to contract with Young on September 24, 2013. C.R. 588, 611. It is notable that Denton did *not* say "all the

5

terms are acceptable;" rather, Denton qualified the Committee position with "appeared acceptable" and the need to "rework the addendum."

On September 25, 2013, Young submitted a revised Addendum for PlainsCapital's consideration. On October 1, 2013, Young inquired by email as to the status of the Addendum for which Denton responded "[w]e are getting closer, supposed to have a conference call this morning on it." C.R. 182-3. Notably, it is by this email that Young claims, among several other instances, that he has a binding contract with PlainsCapital. C.R. 491. Again, we see Young claiming a contract when clearly there is not one.

On October 4, 2013, Denton recommended to Young additional changes to the Addendum for the Committee's consideration. C.R. 186-198. Later that day, Young, through his agent Chiles, stated he agreed to the changes in the Addendum and inquired if Denton would like "me to clean (Addendum) up." C.R. 195. Denton responded that he wanted a clean executable version of the document. C.R. 199, 585-87.

Young testified that he spoke with Denton by telephone on October 4, 2013, to confirm that PlainsCapital approved the Addendum. C.R. 449-452. However, Denton stated that he does not recall the October 4, 2013 conversation with Young and does not believe it happened because Denton "wouldn't have said something

6

that hadn't been approved." C.R. 585-87. Denton did not have the Committee's approval to contract with Young on October 4, 2013. *Id*.

On October 7, 2013, Young, again through Chiles, delivered the clean Purchase Agreement and Addendum to Denton. C.R. 199. By this email of October 7, 2013, Young knew that PlainsCapital and Young did not have a contract because Chiles stated "Please review Paragraph 10 of the addendum in which we clarified the undefined word 'affiliate.' Let me know if you have any questions." *Id*. Later, PlainsCapital's Committee rejected the offer from Young, denying the sale of the Property to Young. C.R. 357.

## C.    Young's own statements demonstrate no contract, no reasonable reliance and no foreseeability.

Young knew that he did not have a valid contract for the purchase of the Property because Young knew that he needed a contract signed by both parties. C.R. 490.

Young now claims that he relied upon purported promises to sign the contract to validate his due diligence efforts. Yet, as the record shows, there was never a promise by PlainsCapital to sign the contract. Despite this, Young had already started his due diligence on the Property *prior* to even submitting the contract to PlainsCapital. C.R. 397-401.

Young testified that starting due diligence prior to entering into a valid contract is part of the risk of a developer. C.R. 408-9, 486-7. The following

7

statements by Young demonstrate that Young could not have believed that there was a valid contract and that any belief of that fact is unreasonable:

- On September 17, 2013, Young reiterated to his attorney that he could not proceed to undergo due diligence or purchase the Property "with out (sic) a signed contract." C.R. 397, 468-9, 485-6 (stating that he started due diligence anyway to secure his investors).

- On September 24, 2013, Young stated to Denton "We would like to schedule some work on the project and we need to have a signed contract. We had another meeting with city and we should move forward with the project as soon as possible." C.R. 391-2.

- Young undertook the due diligence knowing that the contract had not been signed. C.R. 400, 468-9, 485-6.

- In his deposition Young stated "I understand that we have to have a signed contract" in order for an agreement to exist. C.R. 482.

- Young stated that "It requires two signatures" to have a contract. C.R. 490.

- On November 19, 2013, Young claims to have still spent time and resources on his due diligence after that date – even knowing there was no contract with PlainsCapital. C.R. 393, 490-1, 593.

8

- Young never asked Denton why the contract was not signed by PlainsCapital. C.R. 596.

Importantly, Chiles, Young's agent, knew that the PlainsCapital Committee approval was required before the Property could be sold. C.R. 544-5. On October 4, 2013, Chiles claimed he spoke with Denton by telephone but Chiles admits that Denton never told him that PlainsCapital was going to sign the contract. C.R. 545. Further, Chiles admits that no one from PlainsCapital approved the contract or the addendum or promised to sign either document. C.R. 538.

Shortly thereafter, Denton submitted the Young contract to the Committee for approval but the Committee declined the offer. C.R. 316-358. Later, PlainsCapital accepted an offer from Travis County for which it had Committee approval. C.R. 286, 359-372. The Property sold to Travis County upon the recording of the Order Expunging the Lis Pendens. C.R. 174-5, 628-645.

## SUMMARY OF ARGUMENT

The summary judgment evidence proves as a matter of law that there was no contract by and between Young and PlainsCapital because all of the terms for a contract were never agreed to by both parties nor did PlainsCapital promise to sign a written agreement.

This is a suit by Young seeking specific performance under an invalid, unsigned real property purchase contract. Young filed suit and recorded a Notice of Lis Pendens (the "Lis Pendens"), clouding title to PlainsCapital's property. On February 6, 2015, the 353rd District Court expunged the Lis Pendens (upon motion by PlainsCapital) because Young could not show by a preponderance of the evidence that he had a valid claim, the very same basis as this appeal, to the property at issue.

The Court should uphold the trial court's orders on PlainsCapital's Cross Motion for Summary Judgment and deny Young's Motion for Summary Judgment because:

• No valid, enforceable contract existed between Young and PlainsCapital;

• PlainsCapital did not make any promise to Young that it would sign a contract;

• Young cannot reasonably rely upon the purported promises of PlainsCapital;

• Young's reliance was not foreseeable by PlainsCapital; and

10

• Young's contradictory testimony does not create a fact issue favorable to him.

This Court should affirm the judgment in all respects.

## ARGUMENT AND AUTHORITIES

**A.      Standard and Scope of Review**.

To succeed on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A matter is conclusively established if reasonable people could not differ on the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant establishes its right to summary judgment, the burden shifts to the non-movant to present evidence that raises a genuine issue of material fact. *Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied). When both parties file motions for summary judgment, the court may consider all of the summary judgment evidence filed by either party. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

A court of appeals reviews a summary judgment order by a de novo standard of review. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). When the trial court grants a general summary judgment and does not specify the ground on which it granted the judgment, the appellant must argue that every ground of the summary judgment motion is erroneous. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Boone R.*

10

*Enters., Inc. v. Fox Television Stations, Inc.*, 189 S.W.3d 795, 796 (Tex. App.—

Dallas 2005, no pet.).

**B.    The trial court did not err in granting PlainsCapital's Cross Motion for Summary Judgment finding that there was no acceptance by PlainsCapital of the alleged written contract**.

In this case, there are two components to the Purchase Agreement; the first

is the original Purchase Agreement and the second is the Addendum.

To establish the existence of an enforceable contract, Young must prove the

following elements: (1) an offer, (2) *acceptance in strict compliance with the*

*terms of the offer*, (3) a meeting of the minds, (4) each party's consent to the terms,

and (5) execution and delivery of the contract with the intent that it be mutual and

binding. *Komet v. Graves*, 40 S.W.3d 596, 600 (Tex. App.--San Antonio 2001, no

pet.); *Wal-Mart Stores v. Lopez*, 93 S.W.3d 548, 555-556 (Tex. App.--Houston

[14th Dist.] 2002); *Potcinske v. McDonald Prop. Invs., Ltd.,* 245 S.W.3d 526, 530

(Tex. App. Houston 1st Dist. 2007). (Emphasis added).

There must be a meeting of the minds with respect to its subject matter and

essential terms for an agreement to be valid and enforceable. *Wal-Mart Stores*, 93

S.W.3d at 555-556.  The determination of a meeting of the minds, and thus offer

and acceptance, is based on the objective standard of what the parties said and did-

-and not on their subjective state of mind. *Adams v. H & H Meat Prods., Inc.*, 41

S.W.3d 762, 771 (Tex. App.--Corpus Christi 2001, no pet.); *Angelou v. African*

11

*Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.--Houston [14th Dist.] 2000, no pet.). This legal standard is troubling for Young because it is Young's subjective interpretations that provide the only nexus to a completed written contract.

"Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Potcinske* at 245 S.W.3d at 530 citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.--Dallas 1999, pet. denied). Mutual assent to material terms is a prerequisite to forming a binding, enforceable contract. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

In determining mutual assent, the court considers the communications between the parties and the acts and circumstances surrounding those communications. *Komet*, 40 S.W.3d at 601; *Angelou*, 33 S.W.3d at 278. It is well established that parties may agree to the material terms of a contract, and leave other matters open for later negotiation; it is only when an essential term is left open for future negotiation that no binding contract exists. *Komet,* 40 S.W.3d at 602.

## C.    Purchase Agreement not accepted.

Young claims PlainsCapital agreed to the terms of the Purchase Agreement because Denton sent an email that said the Purchase Agreement terms "appeared acceptable but they would like for us to rework the addendum." Acceptance must

be clear and definite. *Engleman Irrigation v. Shields Bros.,* 960 S.W.2d 343, 352 (Tex. App.—Corpus Christi 1997, pet. denied).

On appeal, Young has explained to the Court what Denton meant by "appeared acceptable:" "meaning the underlying contract was agreed." Respectfully, Young's subjective interpretation is not persuasive. At best, "appeared acceptable" means no more than "looks" acceptable or "has the appearance" of being acceptable and it is anything but clear and definite. This is not acceptance.

Further, there is no case law that supports the position that the language "appears acceptable" is an expression of acceptance and you would not expect to find anything supportive when the law requires acceptance to be clear and definite.

And, the evidence shows PlainsCapital's subsequent actions support no more than mere "appearances," not actual acceptance. For example, PlainsCapital did not sign the contract, did not promise to sign the contract, later email showed unequivocally no acceptance by PlainsCapital (C.R. 402), and PlainsCapital's Committee declined Young's contract. C.R. 357.

Also, as the record before this Court shows, Denton took no actions or made no statements that were consistent with "acceptance of the terms of a contract." Denton repeatedly advised Young that Denton had no authority to enter into a

13

contract for PlainsCapital and that only PlainsCapital's Committee could approve the sale of the Property. C.R. 580-1, 585, 602-3, 621. Accordingly, there is no acceptance by PlainsCapital of the terms of the Purchase Agreement.

Further, PlainsCapital, through Denton, with the language "they would like for us to rework the addendum" is a rejection of Young's offer as a matter of law. An acceptance that does not mirror the terms of the offer is both a rejection of the original offer and a counteroffer. *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 250, 254 (Tex. 1968).

### ii. Addendum was not accepted.

Young argues in favor of PlainsCapital's agreement on all terms because Denton requested changes to the Addendum, which Young accepted, and then according to Young, upon Young's acceptance of terms; "a contract was formed." Again, the same problem, PlainsCapital had not agreed to anything—PlainsCapital requested changes in the Addendum- which is typical of the negotiation process, nothing more. Acceptance must be clear and definite. *Engleman Irrigation v. Shields Bros.,* 960 S.W.2d at 352.

The terms of the Addendum were particularly important to PlainsCapital because PlainsCapital did not want to allow Young the ability to assign his interest in the contract to a third party. C.R. 196, 199, 209.

14

Young may have accepted the Addendum terms after PlainsCapital requested some changes but the record is silent as to PlainsCapital accepting those terms; silence is not clear and definite. It is mere hope and speculation by Young that those changes were all PlainsCapital had before assent to the terms.

Young's argument continued, "Denton then asks for an executable version." And then Young channels what Denton meant, because Denton did not elaborate, that the only meaning could be to "sign the written version." But, apparently, evidence gets in the way; Denton testified he wanted a clean version to present to PlainsCapital's Committee, which has to approve the contract. C.R.585-897. And, we know from the evidence, PlainsCapital's Committee did not approve the contract and the contract was never signed. C.R. 357. Apparently, asking for an executable version could mean something other than a promise to sign that written version; therefore, the alleged acceptance was not clear and definite and must fail.

Young, went on, and argued that Denton, in requesting the executable version, was silent as to the Committee's approval; Young citing *Humble Oil & Refining Co. v. Harrison,* 205 S.W.2d 355 (Tex. 1947) that Denton had a duty to speak about the Committee's approval and his failure was misleading. There are problems with Young's analysis, first is that Young and his agent Chiles were both well aware of the requirement that PlainsCapital's Committee approval was required—since there is no evidence that at any time Young or his agent Chiles

15

were told that PlainsCapital approved the contract; Young cannot make the leap that not being told of Committee approval must mean there is Committee approval. Again, acceptance must be clear and definite.

Second, the case cited by Young does not hold as represented by Young. The *Humble Refining* case dealt with a mistake in construction of a mineral lease in which an assignee of a mineral interest was not paid his full share of rentals because he did not tell the lessor he was an assignee of the lessee's interest; it has nothing to do with acceptance or the terms of a contract. The assignee was claiming the lessor had breached the lease by not making proper rent payments when the assignee had not informed the lessor of the assignee's interest. *Humble* at 225-6. The court held that silence when there is a duty to speak may be misleading. *Id.* Here, there is no evidence of a duty to speak specifically about whether PlainsCapital had agreed to all of the terms of the contract, because PlainsCapital had never explicitly agreed to the written terms.

Finally, somewhat ironically, the Addendum was not "finalized" after Denton's suggested changes to the addendum because Young changed the terms of the Addendum by adding a definition of "Affiliated Parties." C.R. 199. Again, an acceptance that does not mirror the terms of the offer (PlainsCapital is not conceding that Addendum revisions constituted an offer but Young has taken that

16

position) is both a rejection of the original offer and a counteroffer. *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d at 254.

### iii.    No Red Herrings.

Young claims "several false arguments and red herrings;" however, in the context of the case and law, Young is mistaken in his analysis.

Young claims that PlainsCapital's internal Committee records that show PlainsCapital did not approve the contract with Young are irrelevant. However, the records showing the Committee did not approve the deal are relevant because it shows Denton's testimony was consistent with knowing PlainsCapital had not approved the deal. In fact, Denton states that he would not have told Young, in the infamous October 4 telephone call (discussed below), that there was a deal because he knew there was not one. C.R. 585-7.

Young claims PlainsCapital falsely stated that Young's contract offer was "rejected," when the term rejected was not found in the email, in particular C.R. 391. The term "rejected" was not used in the email nor did PlainsCapital place the term "rejected" in quotes to  indicate the actual term was used; rather, the term rejected was used to show that Young's contract terms were not accepted. *See United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d  at 254.

Young asserts that PlainsCapital, and in particular the undersigned firm, falsely stated that Young believed "in his deposition that he had a contract when

17

Denton said 'we're getting closer.'" Denton sent the "we're getting closer" in an email dated October 1, 2013. C.R. 182. Here is Young in his own words after discussing Denton's use of the phrase "we're getting closer:"

Q.     All right. That's what I just wanted to find out. So on October 1st you think you had an agreement with PlainsCapital Bank?

A. (by Young):     Yes sir.

C.R. 491.

PlainsCapital did not misstate Young.

### iv. Briefing Sound.

Finally, with respect to Young's claims of malfeasance in briefing, Young claims PlainsCapital made the false argument that a redline version of the Addendum was "for the [PlainsCapital] committee to consider." Specifically, PlainsCapital's Motion stated "On October 4, 2013, Denton recommended to Young additional changes to the addendum for the Committee's consideration." C.R. 115. Young claims "False Argument" because there is no mention about a Committee in the actual email.

However, on October 1, 2013, Denton sent Chiles, Young's agent, an email following Chiles' inquiry about the status of the Addendum; Denton stated "supposed to have a conference call this morning on [the addendum]." C.R. 182. Was this a one person conference call?  The conference call coupled with Young

and Chiles' knowledge that a committee was involved makes the charge of falsehood - false.

**v. Summary**.

In this case, there was no meeting of the minds between Young and PlainsCapital on the contract and certainly no clear and definite acceptance. Neither PlainsCapital nor Denton accepted the terms of the contract from Young.

In fact, PlainsCapital did not make any offer to Young because, from the outset, Denton made it clear that all final contracts must be submitted and approved by the Committee. C.R. 98, 479, 485, 578, 580. This understanding was well known because Young had submitted two other contracts to Denton in the past for the purchase of the Property, only to have Young back out of the contracts. C.R. 422-430.

Young and his agent knew objectively that Denton would negotiate the terms of a contract for sale, but the Committee must approve/accept any and all offers for purchase. C.R. 98, 479, 485.

With Young's understanding that the Committee approval was necessary, Young submitted an offer to purchase the Property on September 18, 2013. A week later, on the 24th, Denton said that he "received a response this morning that all the terms appeared acceptable but that they would like for us to rework the addendum…." C.R. 179, 391. Thus, it is quite apparent from Denton's perspective

19

that the contract was still in negotiation and Denton reiterated that the contract must be reviewed and approved by the Committee. Also, from a legal analysis the inclusion of "rework the addendum" was at least an outright rejection of the contract as a matter of law.

PlainsCapital did not accept the terms of the contract on September 24, 2013. Denton only stated that the contract "appeared acceptable" and that "they" (the Committee) required an addendum. The word "appeared" is not a clear and definite acceptance, see *Engleman*, and the addition of a "rework the addendum" is a rejection as a matter of law, see *United Concrete Pipe.* Regardless, Denton reiterated his need to get approval from the Committee by stating "I will see what I can get done." C.R. 391.

Thereafter, the parties began to negotiate the terms of the Addendum to the contract for which Young submitted a revised Addendum for consideration. C.R. 182-235. On October 4, 2013, Denton submitted additional changes to the Addendum and Young agreed to the changes. C.R. 186-198.

Then Chiles, on behalf of Young, inquired if Denton would like a clean contract for review *and approval*. C.R. 199-200 (emphasis added). Chiles' own language belies Young's argument; clearly, Chiles knew there was no approval because his email sought approval. Regardless, Denton did not promise to sign the contract, nor did he state that he or the Committee approved the contract. C.R.

523-526. At deposition and his affidavit, Chiles admitted that Denton did not advise him that PlainsCapital accepted the contract or that Denton would sign it. C.R. 98, 531-2.

On October 7, 2013, Young delivered a clean *and revised* Purchase Agreement and Addendum to Denton/PlainsCapital for consideration. By his email on October 7, 2013, Young knew that PlainsCapital and Young did not have a contract because Young, through Chiles, stated "Please review Paragraph 10 of the addendum in which we clarified the undefined word 'affiliate.' Let me know if you have any questions." C.R. 199. The definition of "affiliate" was material because PlainsCapital was concerned about Young being a straw buyer. C.R. 196, 199, 209.

Finally, the purported contract delivered by Young on October 7, 2013 was revised by Young from PlainsCapital's Addendum version (which PlainsCapital also never stated was agreed to), and, therefore, Young rejected the terms of the Addendum as last revised by PlainsCapital. Thus, as a matter of law, there was no acceptance and no meeting of the minds. PlainsCapital never accepted—even under Young's loose standards for acceptance- to Young's last version of the contract.

21

**C.** **The trial court did not err in granting PlainsCapital's Cross Motion for Summary Judgment on Young's promissory estoppel claim because the evidence showed, as a matter of law, that there was no acceptance and no promise to sign, oral or otherwise, of an alleged complete and written contract.**

Young argues that the doctrine of promissory estoppel should be applied to force specific performance of the sales contract and avoid the requirements of the statute of frauds. Young relies upon the case of *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex. 1972).

To succeed on Young's claim under promissory estoppel and avoid the requirements of the statute of frauds, Young must prove (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524, 27 Tex. Sup. Ct. J. 74 (Tex.1983).

But, the doctrine of promissory estoppel does not apply in this case because promissory estoppel does not create a contract where none existed. *Moore,* 492 S.W.2d at 936. Rather, promissory estoppel is a defensive plea that estops a promisor from denying the enforceability of a promise. *Id.* Additionally, the promissory estoppel exception to the statute of frauds is "narrow" and applies only "to cases where the promise was 'to sign a written agreement which itself complies with the Statute of Frauds.'" *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982).

**i.    No Promise**.

Quite distinguishable from any case cited by Young is the fact that PlainsCapital did not agree or promise to sign the proposed contract delivered by Young; therefore, the doctrine of promissory estoppel does not apply and the contract is not enforceable under the statute of frauds.

For example, Young's reliance on *Fretz Construction Company v. Southern National Bank,* 626 S.W.2d 478 (Tex. 1981) is not well taken because it is distinguishable from the instant case. In *Fretz*, the parties agreed that there was a promise to sign the contract. Here, PlainsCapital explicitly denies there ever was a promise to sign a contract and that is supported by Denton's statement that he did not promise to sign the contract and by the fact PlainsCapital's Committee did not approve the contract. C.R. 585-8.

In fact, it is notable that nowhere in the record does it state PlainsCapital, or Denton, ever said, wrote, emailed, texted, or sent smoke signals that the "contract" would be signed by PlainsCapital—except Young in a single alleged telephone call for which there was no conduct by PlainsCapital following said call that was consistent with Young's claims that PlainsCapital accepted his contract offer [this telephone call, which is questionable in its own right, is discussed specifically below].

Here, Young has no clear and definite evidence that PlainsCapital had an agreement with him. In the promissory estoppel cases where a contract is found enforceable there is at least an explicit agreement to contract. Unlike the present case, Young asks the Court to interpret language and meaning because the plain meaning and circumstances do not support Young: the promissory estoppel exception to the statute of frauds is "narrow" and applies *only* "to cases where the promise was 'to sign a written agreement which itself complies with the Statute of Frauds.'" *Nagle* at 800. Again, the parties all agree there never was a promise by PlainsCapital to sign the contract.

To demonstrate Young's desperate position, Young argues that the two words "executable form" from one email means that PlainsCapital agreed to the terms of the contract and thereby promised to sign the contract. However, no such promise was made. Additionally and because of Young's prior history with Denton, Young knew that all final versions of the contract required final submission and approval from PlainsCapital, which had not occurred.

Even Young's agent (Chiles) admits that Denton never told him that PlainsCapital accepted the contract or that PlainsCapital would sign the contract. Therefore, Young knew that neither PlainsCapital nor Denton had promised to sign the contract. Promissory estoppel does not apply without a promise to sign a contract.

24

**ii. Young's reliance was not reasonable**.

Young claimed he relied on PlainsCapital's promise that it would sign the contract. However, Young knew that he needed a signed contract before starting any feasibility study of the property. C.R. 397-99. In fact, Young started his due diligence prior to even submitting a contract to PlainsCapital. C.R. 397-401. On September 17, 2013 by email to his counsel, Young knew he needed a signed contract to proceed. *Id.* Yet, Young has claimed he proceeded anyway without a signed contract. Young's actions and reliance are unreasonable given his own knowledge that he required a signed contract.

**iii. Young's reliance was not foreseeable by PlainsCapital**.

PlainsCapital could not have foreseen that Young would have relied on anything other than a signed contract after his statements to PlainsCapital. C.R. 391-2. Even so, Young knew that PlainsCapital did not believe they had entered into an agreement on November 15, 2013, but Young still spent time and money anyway. C.R. 393. Additionally, no promise to sign the contract was made by Denton.

**iv. Statute of Frauds**.

The statute of frauds is strictly adhered to in Texas and is set forth under Chapter 26 et. seq. of the Texas Business and Commerce Code. Specifically, "there must be a written memorandum which is complete within itself in every material

25

detail and which contains all of the essential elements of the agreement so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978).

The writing must contain all the elements of a valid contract, including the identification of both the parties to the contract and the subject matter of the contract. *Dobson v. Metro Label Corp*., 786 S.W.2d 63, 65 (Tex. App. – Dallas 1990, no writ).

**v. Description of Property**,

To form a valid, enforceable contract for the sale or lease of real property for longer than one year, a sufficient written description of the property is required by the Statute of Frauds. TEX. BUS. & COM. CODE § 26.01; *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006); *Castroville Airport, Inc. v. City of Castroville*, 974 S.W.2d 207, 212 (Tex. App.--San Antonio 1998, no pet.).

Young and Chiles failed to identify the Property sufficiently, as Young claimed in his Lis Pendens he only wanted to purchase a portion of the Property (C.R. 81-5, 169-173 [82 acres]), while Chiles identified different portions of the Property (C.R. 98-102 [143 acres]).  In fact, Young even admits the acreage was misstated in his Plaintiff's Response to Defendant's Motion to Strike: "[Young and Chiles] misstate the acreage." C.R. 654.

26

But, the misstatement of acreage is not harmless, Young claims, at one time, he was attempting to purchase and develop 82 acres of land. C.R. 81-85. However, Chiles stated under oath that Young was attempted to purchase and develop a different tract of land, being 143 acres of land in Travis County. C.R. 98-102. But, even more astonishing is the fact that Young's lawsuit seeks to enforce specific performance of a contract for the purchase of real property totaling over 227 acres. C.R. 3-40.

**vi. Summary**

The contract must be executed and delivered with the intent that it be mutual and binding. *See Komet*, 40 S.W.3d at 600. In this case, PlainsCapital did not sign the contract, did not agree to sign the contract, or deliver it to Young; therefore, there was no intent by PlainsCapital that the contract be mutual and binding.

Here, no valid contract exists. PlainsCapital did not accept Young's proposed contract nor did PlainsCapital agree to sign Young's contract. There was no acceptance and no meeting of the minds. PlainsCapital did not consent to the terms of the proposed contract, and PlainsCapital did not execute and deliver the contract in any respect. Therefore, such a contract is unenforceable by law. Because the contract is not enforceable under the Statute of Frauds, Young has no lawful claim to the Property.

27

**D.   The trial court did not err in granting PlainsCapital's Cross Motion for Summary Judgment nor in denying Young's Motion for Summary Judgment because there is no factual dispute over the substance of a telephone call. Young stated under oath that PlainsCapital, through its agent Denton, only agreed to terms with respect to an addendum; not the entire contract as Young now claims.**

The infamous October 4, 2013, telephone call where, according to Young, Denton got to "specific oral confirmation and assurance of the agreements." But Denton did not. In Young's own words under oath he undercuts his entire case:

Q:   Why did you [Young] call [on October 4, 2013] Mr. Denton?

A (by Young):   To verify that everything was completed.

Q:   Okay. And to the Best of your ability, tell me exactly what Mr. Denton said to you.

A:   "We approved the addendum."

Q:   Do you know what he meant by "we"?

A:   No sir. We had numerous, numerous phone calls and discussions about this addendum for a very long time.

Q:   Okay. Did he use any other language, anything else said other than "We approve the addendum"?

A:   I don't remember anything, no sir. We—I don't remember.

C.R. 451-2.

The infamous telephone call that Young stated in his affidavit went as follows: "I called Mr. Denton and he told me we had a deal and [PlainsCapital] would sign the contract when he got it." C.R. 81. This is a false statement contradicted by no less than Young himself in his deposition testimony.

This means that the second component to the contract, the Addendum, was never agreed to by PlainsCapital. Also, Young's various versions of what he says Denton said does not create a fact issue.

But, significantly, Young's argument over the October 4, 2013, alleged telephone conversation is meaningless; on October 7, 2013, Young sent PlainsCapital a revised contract, with an additional term in the Addendum, for which PlainsCapital did not, even according to Young, accept.

## CONCLUSION AND PRAYER

Appellee PlainsCapital requests that the Court affirm the trial court's judgment in all things and grant it any and all other relief to which it is entitled in either law or equity.

Respectfully submitted,

/s/ Steven R. Shaver
Steven R. Shaver
State Bar No. 18136550
sshaver@fjrpllc.com
FISHMAN  JACKSON RONQUILLO
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, Texas  75240
Tel. (972) 419-5500
Fax. (214) 432-6688

**Attorneys for Appellee**
**PlainsCapital Bank**

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(4), I hereby certify that the above styled document contains 6,308 words, excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certification, certificate of compliance, and appendix. Counsel is relying on a word count computer program used to prepare the document. Appellees have filed a motion for permission to extend the word count limits.

*/s/ Steven R. Shaver*
Steven R. Shaver

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to the Texas Rules of Appellate Procedure, the undersigned hereby certifies that on the 22nd day of December, 2016, a true and correct copy of the foregoing is being filed with the Court of Appeals and served via electronic filing and/or U.S. Mail, First Class, CMRRR and/or email on the counsel listed below:

Stephen Casey
State Bar No. 24065015
info@caseylawfirm.us
Casey Law Firm Office, PC
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
Tel. (512) 257-1324
Fax. (512) 853-4098

*/s/ Steven R. Shaver*
Steven R. Shaver

## Appendix

1.    Order Denying Plaintiff's Motion for Partial Summary Judgment dated April 21, 2016.

2.    Order Granting Defendant's Motion for Summary Judgment dated April 21, 2016.

Appendex 1

CAUSE NO. D-1-GN-14-004656

| | | |
|---|---|---|
| T. DAVID YOUNG | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| vs. | § | 353rd JUDICIAL DISTRICT |
| | § | |
| PLAINSCAPITAL BANK, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | TRAVIS COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On July 1, 2015, the Court considered Plaintiff's Motion for Partial Summary Judgment, Defendant's Objections to and Motion to Strike T. David Young's Motion for Partial Summary Judgment and Summary Judgment Evidence, Defendant's Response to Plaintiff T. David Young's Motion for Partial Summary Judgment, the other pleadings on file, and the arguments of counsel, and the Court finds that the Plaintiff's Motion for Partial Summary Judgment should be denied in all respects and that Defendant's Objections to and Motion to Strike T. David Young's Motion for Partial Summary Judgment and Summary Judgment Evidence are overruled and denied.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment is in all things DENIED.

IT IS FURTHER ORDERED that Defendant's Objections to and Motion to Strike T. David Young's Motion for Partial Summary Judgment and Summary Judgment Evidence are overruled and denied.

Signed _____April 21_____, 2016.

_____
Judge Presiding

ORDER

004547414

PAGE 1 OF 2

ENTERED

674

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

_____
Stephen Casey
Attorney for Plaintiff T. David Young


_____
Steven R. Shaver
Attorney for Defendant PlainsCapital Bank

675

Appendix 2

Filed in The District Court
of Travis County, Texas

APR 2 1 2016

At _____ 3:33 ____ PM.

Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-004656

| | | |
|---|---|---|
| T. DAVID YOUNG | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| vs. | § | 353rd JUDICIAL DISTRICT |
| | § | |
| PLAINSCAPITAL BANK, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On April 11, 2016, the Court considered Defendant's Cross Motion for Partial Summary Judgment, Plaintiff's Response to Defendant PlainsCapital Bank's Cross Motion for Partial Summary Judgment, the other pleadings on file, and the arguments of counsel, and the Court finds that the Defendant's Cross Motion for Partial Summary Judgment should be granted in all respects.

IT IS THEREFORE ORDERED that Defendant's Cross Motion for Partial Summary Judgment is in all things GRANTED.

Signed _____ April 21 _____, 2016.



JUDGE PRESIDING

ORDER

004547420

PAGE 1 OF 2

672

APPROVED AS TO FORM ONLY:

_____
Stephen Casey
Attorney for Plaintiff T. David Young

_____
Steven R. Shaver
Attorney for Defendant PlainsCapital Bank

673